## Moore et ux. et al. v. Gangemi et ux.

*Moore, Panfil & James,* for plaintiffs.
*Joseph G. Feldman,* for defendants.

GORDON, JR., P. J., December 31, 1952.—This bill in equity is brought by the owners of three properties in the City of Philadelphia to restrain defendants, who are the owners of a residential property in the same neighborhood, from altering and converting a part of their residence into an office for the practice of medicine by husband defendant, in alleged violation of a restriction against such an alteration and use contained in the deed to defendants' property. The bill is a class bill to enforce a restriction common to some 80 residential properties, including those owned by the parties to the present suit, which was originally created by a single owner of all of them.

It seems to be undisputed that the use as a professional office to which defendants propose to devote a part of their property is in violation of the restriction, and the only defense set up to the action is an allegation that two of the properties subject to it are now being, or have for some time been, used by their owners as professional offices, and that the failure of plaintiffs and the owners of the other properties in the area to enforce the restriction against those alleged violators constitutes a consent thereto amounting to a waiver or abandonment of it by the owners of all the properties for whose common benefit the restriction was created. The issue thus presented for our determination is clearly and succinctly stated by counsel for defendants at the hearing as follows: "Your Honor, again for the record, may I say that if what we have shown as to the violation of [sic by] these three doctors is not enough to win our case, we lose."

The only other defense set up is laches, and since the proposed alteration and use of their property by defendants, to which objection is made is, as yet, only threatened, the defense of laches set up in the answer is so manifestly without merit that it will not be considered in this adjudication. The laches alleged is the failure of plaintiffs to object to the violations of the restriction by others referred to above. A plea of laches goes to delay in bringing the particular suit in which that defense is raised, not to delay in enforcing a common right against others. A failure to enforce such a right may result in the loss of it, but, when the existence of the right is itself in question, a suit that is not unreasonably delayed with respect to a particular threatened violation, is not barred by laches. The abandonment of a restriction, even though it be caused by past failure to enforce it, has nothing to do with the question of laches in bringing an action

to enjoin other threatened violations of it. This is obvious.

From the pleadings, stipulation of counsel, and the evidence presented at the hearing on the bill, answer and proofs, we make the following

*Findings of Fact*

1. Plaintiffs, Moore, Large, Birkmann and Dawes are the respective owners of 1010, 1011, 1020 and 1021 Dyre Street, in the City of Philadelphia.

2. Defendants, Dr. Columbus Gangemi and his wife, are the owners by entirety of 1001 Dyre Street, in that city, having acquired title thereon on June 16, 1952.

3. The premises owned by plaintiffs and defendants constitute part of a certain larger rectangular tract of land bounded by Pratt Street, Rutland Street, Harrison Street and Castor Avenue, which tract was originally owned by Louis Burk and his wife, and was by them transferred by deed of conveyance dated July 2, 1926, and recorded in deed book J. M. H. 2373, page 215 et seq. to one John D. Fotheringham and Matilda, his wife. The conveyance contained a number of restrictions, only one of which is pertinent to the present issue and reads as follows:

". . . that no building or buildings shall be erected or built or permitted to be erected or built upon the hereby granted tracts of ground or any part thereof, except for use as a private dwelling or as a private garage in connection with a private dwelling, nor shall any building thereon be converted or used for any other purpose."

4. All the improvements within the tract in question are private dwellings, constructed in strict conformity to the above restriction, and are used as such, with three possible exceptions as to use hereinafter noted, which are alleged by defendants to be violations thereof.

5. The three alleged violations of the restriction by the owners or occupiers of two other properties (1001 Haworth Street and 4905 Castor Avenue) in the same restricted area, which are relied upon by defendants to justify their own proposed violation of it, at 1001 Dyre Street, are as follows:

(a) Between 1939 and 1945, Dr. Leo A. Kane practiced medicine in an office which he operated in his residence at 1001 Haworth Street. He also had an office in another part of the city, but at his residence he maintained regular afternoon office hours for receiving and treating patients.

(b) Dr. Kane sold the Haworth Street property referred to in paragraph (a) above to Dr. George K. Firth in 1945, who, both before and since acquiring it, has regularly practiced his profession at 3258 Knorr Street which is outside the restricted area. Dr. Firth acquired the Haworth Street property in order to have his home separate from his office. From time to time, however, he sees patients in his home, when they need prompt emergency attention, and are unable to visit his office at regular office hours. In this limited respect only can Dr. Firth be said to practice any part of his profession in the restricted area. This is merely an arrangement of convenience, occasional in character, and constitutes a negligible part of his professional practice. Dr. Firth has none of the usual equipment of a physician's office in his home, where he keeps only such instruments and medicines as are customarily carried in a doctor's bag.

(c) Dr. C. Carroll Sticker, a retired dentist, resides at 4905 Castor Avenue, where he sees by appointment, from time to time, a few and steadily dwindling number of his former patients. He takes no new patients, and those he sees are treated in a room on the second floor of his home, in which he has the essential pieces of professional equipment, but does not maintain the usual fully equipped office of dental practitioner.

6. On June 13, 1952, three days before acquiring the legal title to 1001 Dyre Street, defendants procured, over the protest of plaintiffs, from the zoning board of adjustment and the city authorities, the necessary certificates and municipal permits to enable them to enlarge the present dwelling house erected on said property, by constructing a one-story addition on the rear thereof, which will contain two rooms and a separate entrance. Although the additional rooms would be suitable for use for dwelling purposes, defendants intend to furnish, equip, maintain and use them exclusively as a doctor's office and waiting room for the regular practice of medicine therein by Dr. Columbus R. Gangemi, husband defendant.

## Discussion

Three questions are raised by the foregoing findings: first, whether the proposed practice of medicine by defendant doctor at his Dyre Street residence, and the construction of an addition to his present dwelling house for that purpose, would violate the restrictions against the use of the property in question for any purpose other than as a private dwelling; second, whether Doctors Firth and Sticker, who own two neighboring properties subject to the same restriction, are violating it by occasionally receiving and treating patients in their homes in the circumstances described in our foreging findings; and, third, if so, whether the failure of plaintiffs and the owners of the 80 properties in the restricted area to object to such use by those doctors of their homes, amounts to such an acquiescence therein as to constitute a waiver or mutual abrogation of the restriction estopping plaintiffs from enjoining defendants from violating it on their property.

With respect to the first of these questions, it is manifest that the use of any part of defendants' prop-

erty for the practice of medicine would be a violation of the restriction in question. This has been held in a number of cases in this Commonwealth: Hogan v. Rose et al., 14 D. & C. 256, decided in 1930 by the present chief justice, when he was president judge of this court; Stollsheimer et al. v. Morgan et al., 39 D. & C. 270 (1939). Indeed, defendants do not contend otherwise; they admit, through their counsel, that they are planning to violate it. They contend, however, that plaintiffs have silently acquiesced in similar violations of the restriction on two other properties in the same area, thereby working a revocation of it, and estopping themselves from invoking it against present defendants. This contention is the subject of the third question of law which will be discussed later.

The second question in the case is whether the irregular and occasional practice of medicine by Doctors Firth and Sticker at their homes, as described in our findings, constitutes a violation of the restriction in contemplation of law. No hard and fast rule can be laid down for determining this question in all cases; each case must stand upon its own facts. Obviously, a doctor who receives a patient in his home in an emergency, or on rare and special occasions, would not violate the restriction, the plain purpose of which is to prevent the intrusion into an exclusively residential section of those innumerable, constant and annoying noises and disturbances, including the natural influx of strangers, which always attend the conduct of businesses, both professional and lay, and which inevitably destroy the peace and quiet of such a neighborhood. On the other hand, the regular and daily practice of medicine, with fixed office hours and the unrestricted and general acceptance of patients, would clearly come within the ban of the restriction. Between these two extremes lie all the possible combinations of circumstances that bear upon this problem, and a fair ap-

praisal must be made in each case of what is actually done or contemplated by the alleged violator in order to determine whether the restriction is violated. In many cases, the solution would be most difficult and uncertain, but in the case before us, we have had no difficulty in concluding that the professional activities of Dr. Firth and Dr. Sticker in their homes do not rise to the dignity of the regular practice by them of their professions. The number of patients they receive, at irregular times and in emergencies, is not calculated to destroy the residential peace and quiet of the neighborhood by the constant and continuous visits of outsiders, as might well occur in a busy doctor's regular practice. Taking all the established facts into consideration, therefore, we are satisfied that no substantial violation, either of the language of the restriction, or of its intent and purpose, has been shown by defendants. For this reason alone plaintiffs are entitled to the injunctive relief which they seek.

We come now to the third question raised by the facts of this case; namely, whether, assuming that the professional activities of Dr. Firth and Dr. Sticker constitute violations of the restriction, they are sufficient in number, extent and character to compel us to hold that plaintiffs, and the other owners of properties in the restricted area, acquiesced in those violations by failing to object to them, and have thereby estopped themselves from now enforcing the restriction against these defendants. Upon this subject the authorities are, in our judgment, equally clear. In Hogan v. Rose et al., supra, Judge Stern pointed out that "acquiescence in the violation of a restriction will not prevent insistence upon the enforcement of the restriction as against an additional or enlarged breach: Hohl v. Modell, 264 Pa. 516; Phillips v. Dunseith, 269 Pa. 251."

This principle was reaffirmed by the Supreme Court as late as 1938 by the present Chief Justice in Benner et al. v. Tacony Athletic Association et al., 328 Pa. 577. The restriction before the court in that case prohibited, inter alia, "The sale or manufacture of beer or liquor of any kind or description . . .", and appears to have been created in 1875. The bill was brought against five clubs in the restricted area, one of which, the Tacony Club, had sold liquor on its premises to members for upward of 50 years. The other clubs were so recent in their organization that they could not avail themselves of the principle of laches claimed by the Tacony Club at the trial. In discussing the special situation of the Tacony Club, the Court said, at page 582:

"The case of The Tacony Club is different from that of the others, as the court below properly decided. Except for the period during which the prohibition amendment was in effect, this club, on premises within the restricted area, furnished beer and liquor to its members for almost fifty years prior to the filing of the present bill of complaint. In 1909 it moved from the northwest corner of Longshore and Edmund Streets to its present quarters, 4619 Longshore Street, and there erected a clubhouse at a cost of $30,000. Plaintiffs contend that the dispensing of beer and liquor by a club to its members became a 'sale' only with the passage of the Beverage License Law and the Pennsylvania Liquor Control Act, and that they could not have enjoined The Tacony Club until those statutes were enacted. As already pointed out, however, it was the *transaction* that was the subject of the restriction, regardless of the name which might be applied to it by subsequent licensing legislation. The Tacony Club, during all these years, dispensed liquor to its members in exactly the same manner as at present. Because of the long span of time during

which plaintiffs remained inert, and the erection of the new building to carry on the activities previously conducted by the club, including the furnishing of liquor to its members, it would be unjust now to enforce the restriction by an injunction against The Tacony Club."

There, the toleration of any undoubted and long continued violation of the restriction, which must have been well known to all other property owners in the restricted area, was held not to constitute such an acquiescence in the violation as to amount to a revocation of the restriction itself. To support an inference of a mutual abandonment of a common restriction by those for whose benefit it was created, considerably more than acquiescence in a single, or trivial, violation of it is required. Certainly, the trivial and unsubstantial violations in the present case, advanced by defendants as working an abrogation of the restriction, are utterly insufficient to justify our enjoining the relief prayed for. In the case last cited, the court also said, P. 581: "It is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned, that objection to further violations is barred."

This observation was made in a somewhat different connection, but its obvious soundness, generally, justifies, we believe, our quoting it out of context, and applying it here. However we approach the solution of the instant problem, we are inevitably forced to the conclusion that plaintiffs are entitled to an injunction restraining defendant doctor from practicing medicine, or otherwise violating the restriction, in any part of the Dyre Street property, and, together with his wife, from permitting it to be done by others.

Plaintiffs, being entitled to injunctive relief, it remains only to consider whether, in granting it, we

should restrain defendants from building the addition to their dwelling which they contemplate, as well as from practicing medicine on the property. Plaintiffs contend that the addition should also be restrained, since the restriction forbids not only the use of any part of the property for purposes other than a dwelling, but also the erection or building upon "the hereby granted tracts of ground or any part thereof" of any building "except for use as a private dwelling. . . ." It is true that the learned writer of the opinion in Hogan v. Rose, supra, reasoned that an addition to, or alteration of, an existing building for a prohibited use should be restrained as a violation of such restriction. He made it clear, however, that he was not finally determining that question, for at the conclusion of his discussion of it, he said (P. 257):

"Even if this viewpoint be found to be inconclusive upon final hearing and consideration, it would seem sufficiently compelling to require the entry at this time of a preliminary decree pending the final adjudication of the facts and law of the case."

This recognition that the question was debatable was necessary to justify the preliminary injunction which the court granted in that case in order to preserve the status quo. But that it would have enjoined the physical improvement of the building, after final hearing, may be seriously doubted, in view of the earlier decision of our Superior Court in Boyer v. Schoch, 82 Pa. Superior Ct. 513 (1924). In it the restriction provided that "the building to be erected thereon shall be none other than a private dwelling; that no building to be erected thereon shall at any time thereafter forever be altered, changed or used for any purpose other than above designated." The decree sought was one requiring "appellants to remove their alterations and restore the basement to the condition it was in when they acquired title."

In discussing this phase of the case, Keller, J., pointed out that, "there is nothing in the alterations, per se, which is incompatible with their use as a part of the dwelling; they are not such as necessarily set the basement apart as a business place or prevent its use for dwelling purposes", and concluded by holding that the decree went too far, for it required the removal of the alterations and improvements in question, "which are not in themselves objectionable, but which may become so if used in such a way as to contravene the restriction in the deed", and directing the court below to modify its decree accordingly. This case, we think, settles the question as to the right of present defendants to construct the proposed addition to their property, if they still desire to do so. It is merely a one-story structure to be attached to the rear of the dwelling house, and contains two rooms. The rooms themselves are equally adaptable for use either for dwelling purposes, or for activities that violate the restriction. In this respect the addition differs from the erection of a store or factory, which is not adaptable to dwelling purposes, and hence should be restrained. We think, therefore, that plaintiffs will be adequately protected, if we merely restrain the use of any part of the property for the practice of medicine, or any other prohibited activity, without prohibiting the actual construction of the proposed addition.

For the foregoing reasons we reach the following

*Conclusions of Law*

1. The covenant contained in the deed dated July 2, 1926, between Louis Burk et ux. and John D. Fotheringham et ux., against the erection, conversion or use of any building on premises commonly known as 1001 Dyre Street in the City of Philadelphia, and more particularly described in the bill of complaint filed in this case, for any purpose other than that of a

private dwelling, is a valid, binding and subsisting restriction running with the land.

2. The two alleged existing violations of the restriction are not in fact or in law sufficient, either in quantity or quality, to amount to a substantial violation thereof. Nor does the failure of plaintiffs, and other owners of neighboring properties, for the common benefit of which the restriction was created, to enforce the same, with respect to the alleged violations, constitute in law an abandonment or waiver of the restriction or of their right to demand and compel compliance therewith by defendants.

3. The earlier alleged violation of the restriction by Dr. Leo A. Kane, while he was the owner of 1001 Haworth Street, which terminated in 1945, does not render the restriction unenforcible against present defendants. A violation of a restriction, which has ceased, cannot be revived for the purpose of preventing the owners of land, for whose benefit it was created, from enforcing it against other and subsequent violators.

4. The practice of medicine, in which husband defendant in this case intends to engage on premises 1001 Dyre Street in the City of Philadelphia, would constitute a clear violation of the restriction and plaintiffs are entitled to enjoin the same.

5. Plaintiffs are not barred by laches from maintaining this action.

6. Defendants should pay the costs of this proceeding.

Having found the facts and reached the conclusions of law stated above, we now enter the following decree nisi in the case:

### Decree Nisi

And now, to wit, December 31, 1952, this case having come on to be heard upon bill, answer and proofs, upon consideration thereof it is ordered, adjudged and decreed:

1. Defendants, Dr. Columbus R. Gangemi and Margaret Ann Gangemi, his wife, be and they are hereby perpetually enjoined from practicing medicine, or permitting the same to be practiced in the dwelling house now owned by them and located at 1001 Dyre Street in the City of Philadelphia, and more particularly described in the bill of complaint filed in this case, and in any future addition thereto, or in or upon any other part of said premises or other building hereafter erected thereon.

2. Defendants shall pay the cost of this proceeding.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their counsel, and unless exceptions thereto are filed within 20 days, this decree shall be entered, as of course, by the prothonotary as a final decree, in accordance with the provisions of Rule 1519 (a) of the Rules of Civil Procedure.