Benner et al., Appellants, *v.* Tacony Athletic Association et al., Appellants.

Argued December 6, 1937.  Before Schaffer, Drew, Linn, Stern and Barnes, JJ.

*Hymen Rubin,* of *Bender, Rubin & Simons,* for appellants, Nos. 290-293.

*Russell C. Wismer,* for appellee, No. 309.

*Henry A. Frye,* for appellees, Nos. 290-293, appellants, No. 309.

OPINION BY MR. JUSTICE STERN, January 17, 1938:

Plaintiffs' bill in equity prayed for an injunction against five incorporated clubs—Tacony Athletic Association, Frank Dickel Republican Club, William D. Oxley Post No. 133 the American Legion of the Department of Pennsylvania, 41st Ward Jackson Democratic Club, and The Tacony Club—to prevent them from dispensing beer or liquor in violation of a restriction contained in the title-deeds of the properties occupied by them. The court granted the injunction against all except The Tacony Club. The present appeals are by the four clubs enjoined, and by plaintiffs in the one case where the injunction was refused.

Henry Disston & Sons for many years conducted their large saw works in Kensington, but in the year 1875 began the gradual removal of their plant to Tacony. Here they undertook the development of the surrounding land for residential purposes, principally for the benefit of their employees. Out of a tract, some of which was owned by Henry Disston in his own name and some

by Henry and Mary Disston jointly, and which was bounded by Frankford Avenue, Princeton Street, Keystone Street and Salter's Lane, several plots were set aside from time to time for churches and schools, and the balance of the tract was laid out in building lots most of which were sold to home buyers. All the deeds contained the following restriction: "Subject to the express restriction and condition that no tavern or building for the sale or manufacture of beer or liquor of any kind or description and no courthouses, carpenter, blacksmith, currier or machine shop, livery stable, slaughterhouse, soap or glue boiling establishment or factory of any kind whatever where steam power shall be used for any building or offensive occupation, shall at any time be erected, used or occupied on the tracts of land or any part thereof."

After the repeal of the 18th Amendment, sometime in the period from 1933 to 1935, the four appellant clubs began to dispense beer or liquor, or both, to their respective members. The Tacony Club did likewise from as early as the year 1887 to 1920, when prohibition became effective, and again from 1933 to the present time. All of the club premises are in the restricted area; four of the clubs own their respective properties; one of them, 41st Ward Jackson Democratic Club, is merely a lessee. Plaintiffs are residents or owners of properties also within the tract.

It requires no citation of authorities to support the proposition that the restriction in this case runs with the land, and may be enforced by one or more grantees of the lots as against others. Presumably those who established residences in this area did so in reliance upon the neighborhood remaining more orderly and desirable by reason of the restriction.

The principal question underlying these appeals is whether the dispensing of liquor by a club to its members constitutes a "sale." The clubs rely upon the case of *Klein v. Livingston Club*, 177 Pa. 224, which held

that where a club was organized and conducted in good faith, with a limited and selected membership, and formed for social, literary or other purposes to which the furnishing of liquor to its members was merely incidental, such furnishing did not constitute a sale within the license Act of May 13, 1887, P. L. 108, known as the Brooks Law. The court ruled that that act did not apply to clubs, nor require them to be licensed. Plaintiffs, on the other hand, rely upon the fact that the Beverage License Law of May 3, 1933, P. L. 252, and its amendments of July 18, 1935, P. L. 1217, and June 16, 1937, P. L. 1827, and the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15 (Spec. Sess. 1933-34), and its amendments of July 18, 1935, P. L. 1246, and June 16, 1937, P. L. 1762, now require clubs to be licensed for the dispensing of beer and liquor, and definitely treat such transaction as a sale. See *Commonwealth v. West Philadelphia Fidelio Mannerchor,* 115 Pa. Super. Ct. 241, 248, 249.

None of this legislation controls the present controversy. The real question here involved is whether, when the original deeds were executed, it was intended and understood thereby that the furnishing of liquor by a club to its members was a "sale" within the meaning of the restriction. At that time, which was before the enactment of the Brooks Law, the grantors could not have had in mind any special definition or connotation that might be given the word "sale" by subsequent licensing acts designed to control the liquor traffic. The ordinary meaning of a "sale" is a transfer, or an agreement for the transfer, of title to property for a consideration. These requisite elements are present when a member of a club orders a drink and pays for it. The club corporation purchases liquor and resells it just as any other vendor; the only difference is that its customers are limited to its membership. What the Disstons apparently intended, and with reasonable clarity expressed, was that beer or liquor should not be sold in any man-

ner or by any form of transaction whatever within the tract to which their restriction applied. There is nothing in the phraseology they employed to warrant the inference that it was designed merely to prohibit saloons. Indeed, the words "no tavern *or building*" indicate the contrary.

The appellant clubs contend that changed conditions have so affected the neighborhood that the enforcement of the restriction would be inequitable, but while it is true that some of the tract has become commercial or industrial in character, the larger part remains almost exclusively residential. Even along Torresdale Avenue and Longshore Street, where many of the properties have been turned over to business purposes, residences still closely surround them. Moreover, the fact that commercial establishments have crept in here and there does not impair the utility of the restriction against the sale of beer or liquor; that restriction, to the residents of the neighborhood, has a desirability and an object unaffected by the encroachments of business. Notwithstanding a change of neighborhood conditions, equity will restrain violations of a restrictive covenant so long as it remains of substantial value to the owner of the dominant estate: *Landell v. Hamilton,* 175 Pa. 327, 337; *Phillips v. Donaldson,* 269 Pa. 244, 249, 250, 251; *Hunter v. Wood,* 277 Pa. 150, 152.

Nor do the clubs stand on firmer ground when they point to breaches of other provisions of the restriction which have been tolerated from time to time, such as the maintenance of a carpenter shop, a steam laundry, a livery stable, and a slaughterhouse. It is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned that objection to further violations is barred. Nor will indulgence work a waiver or estoppel against the enforcement of restrictions which are distinct and separate from those previously violated: *Lattimer v. Livermore,* 72 N. Y. 174, 180; *Cuneo v. Chicago Title & Trust*

*Co.,* 337 Ill. 589, 169 N. E. 760, 763, 764; *Polk Manor Co. v. Manton,* 274 Mich. 539, 265 N. W. 457, 458, 459.

As a last line of defense, the clubs invoke the doctrine of laches, calling attention to the intervention of some two or three years between the time when they first began dispensing beer or liquor and when the present bill in equity was filed. Laches, however, is not necessarily to be imputed to a party by reason of the lapse of time where the delay has not resulted in injury to the other party; the circumstances of each case must determine whether there has been a want of due diligence in the institution of proceedings: *Selmer v. Smith,* 285 Pa. 67, 70, 71; *McGrann v. Allen,* 291 Pa. 574, 578; *Quinn v. American Spiral Spring and Manufacturing Co.,* 293 Pa. 152, 160; *Coxe, Trustee, v. Kriebel,* 323 Pa. 157, 169. After plaintiffs learned that licenses had been granted in the restricted territory, their first move was to test the enforceability of the restriction by a case brought against certain individual licensees; successful in that action, they then instituted the present proceedings against the clubs, and the latter were not misled or in any way falsely encouraged by the resulting delay.

The case of The Tacony Club is different from that of the others, as the court below properly decided. Except for the period during which the prohibition amendment was in effect, this club, on premises within the restricted area, furnished beer and liquor to its members for almost fifty years prior to the filing of the present bill of complaint. In 1909 it moved from the northwest corner of Longshore and Edmund Streets to its present quarters, 4619 Longshore Street, and there erected a clubhouse at a cost of $30,000. Plaintiffs contend that the dispensing of beer and liquor by a club to its members became a "sale" only with the passage of the Beverage License Law and the Pennsylvania Liquor Control Act, and that they could not have enjoined The Tacony Club until those statutes were enacted. As already pointed out, however, it was the *transaction* that was the sub-

ject of the restriction, regardless of the name which might be applied to it by subsequent licensing legislation. The Tacony Club, during all these years, dispensed liquor to its members in exactly the same manner as at present. Because of the long span of time during which plaintiffs remained inert, and the erection of the new building to carry on the activities previously conducted by the club, including the furnishing of liquor to its members, it would be unjust now to enforce the restriction by an injunction against The Tacony Club.

The decree of the court below is affirmed; costs to be paid by the four appellant clubs on their appeals, and by plaintiffs on the appeal of The Tacony Club.

ORDER SUR PETITION FOR RE-ARGUMENT.

January 31, 1938. The interpretation in this case of the word "sale," as used in the deeds, is not intended to, and does not, determine the construction of the words "vender" and "dealer" in the Mercantile License Tax Act of May 2, 1899, P. L. 184, as amended. The petition for re-argument is refused. PER CURIAM.