855 A.2d 873 (2004)
VERNON TOWNSHIP VOLUNTEER FIRE DEPARTMENT, INC., a Non-Profit Pennsylvania Corporation, Appellee
v.
William E CONNOR and Barbara J. Sanders, Carmin E. Grasso, Carmin E. Grasso Executor of the Estate of Barbara L. Grasso, Deceased, Donald J. Dunbaugh and Vivian J. Dunbaugh, William B. Barr and Patricia D. Barr, Appellants.
Vernon Township Volunteer Fire Department, Inc., a Non-Profit Pennsylvania Corporation, Appellee
v.
Vicki R. Kurt, Russell E. Briggs, Rita H. Briggs, Robert W. Grasinger, Jennifer L. Rose, Linda Sue Harris, Michael W. Yocina and Scott E. Yocina, Appellants.
Supreme Court of Pennsylvania.
Argued March 2, 2004.
Decided August 19, 2004.
*875 Keith Adam Button, Conneaut Lake, for William E. Connor, Philadelphia, et al.
Debra Higgins Posego, Harry Faber White, Meadville, for Vernon Township Volunteer Fire Department, Inc.
Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BEAR, JJ.

OPINION
Justice NEWMAN.
In these consolidated cases, Carmin E. Grasso, individually and as executor of the estate of Barbara L. Grasso, deceased, William E. Connor, Barbara J. Sanders, Donald J. Dunbaugh, Vivian J. Dunbaugh, William B. Barr, Patricia D. Barr, and Vicki R. Kurt[1] (collectively, Appellants), landowners within the Culbertson Subdivision, a tract of land in Vernon Township, Crawford County, appeal from an Order of the Superior Court reversing an Order of the Court of Common Pleas of Crawford County (trial court). The trial court had granted Judgment in favor of Appellants and against the Vernon Township Volunteer Fire Department, Inc. (Fire Department), a non-profit Pennsylvania Corporation, in an action to quiet title and for declaratory relief. For the reasons discussed herein, we reverse the Order of the Superior Court and remand the case so that the Superior Court can consider the Fire Department's remaining unaddressed issue concerning the applicability of the principles of estoppel, laches, and waiver to the instant matter.

FACTS AND PROCEDURAL HISTORY
In a document dated May 15, 1946 entitled "Restrictions" (Agreement), all of the property owners of the Culbertson Subdivision signed a restrictive covenant[2] prohibiting the sale of alcoholic beverages on their land.[3] The Agreement provides in relevant part that:
[I]n consideration of the premises and intending to be legally bound hereby, we, the undersigned owners of the legal and/or equitable title of certain lots, pieces or parcels of land situate, lying and being in Vernon Township, Crawford County, Pennsylvania ... do hereby mutually covenant and agree with each other that from and after the date hereof, no vinous, spirituous, malt or brewed liquors, or any admixture *876 thereof, shall be sold, or kept for sale, on any of said lots, pieces or parcels of land, or on any part thereof, or in any building, or any part thereof, now or hereafter erected thereon.
This agreement shall be binding upon our respective heirs, executors, administrators, successors, assigns, lessees, tenants and the occupiers of any of said lots, pieces or parcels of land, and is hereby specifically declared to be a covenant running with the lots, pieces or parcels of land held by the respective signers thereof, or in which we, or any of us, have an interest.
(Reproduced Record (R.R.) at 365a) (emphasis added). The intent of the original signatories, as set forth in the Agreement, is "to protect each for himself and for the common advantage of all, our health, peace, safety and welfare and that of our successors in title...." Id. The Agreement was duly recorded in Crawford County Agreement Book 26, page 9, on June 10, 1946.
On July 3, 1997, the Fire Department purchased a 3.25-acre parcel of land within the Culbertson Subdivision for the purpose of building a new truck room and social hall that would sell alcohol to its patrons.[4] This newly acquired parcel is located approximately 2,000 feet from the Fire Department's existing truck room and social hall in Vernon Township. At the time of purchase, the Fire Department did not have actual notice of the restrictive covenant banning the sale of alcoholic beverages on the land. However, the Fire Department did have constructive notice of the restrictive covenant from a title search that its attorney conducted.[5] Nevertheless, the alcohol restriction was not brought to the attention of the Fire Department until November of 1999, well after it had already commenced building the new social hall.[6]
At the time that the Agreement was executed, the Culbertson Subdivision was bounded on the north by the Viscose Corporation, which operated a large manufacturing plant. The Viscose Corporation operated twenty-four hours a day and employed more than 2,500 people. Currently, the former site of the Viscose Corporation is now the Crawford County Industrial Park, which houses a variety of small commercial businesses and offices.[7] The remainder of the restricted tract is bounded by wooded land to the northwest, the Cussewago Creek to the south and west, and the City of Meadville to the east.
Presently, there are no establishments within the Culbertson Subdivision that possess liquor licenses. The closest alcohol-serving establishment is the Fire Department's current social hall, which is located in Vernon Township, approximately one-half mile from the restricted lots. In addition, there are two bars located within two miles of the restricted tract. One bar *877 is situated approximately one and one-half miles away in Vernon Township, and the other is approximately two miles away in the City of Meadville.
Upon learning of the restrictive covenant, the Fire Department stopped construction of the new social hall and sought to have all of the property owners within the restricted tract sign a Limited Release of Restrictions.[8] The owners of sixty-eight of the seventy-seven parcels within the Culbertson Subdivision signed the Limited Release of Restrictions and agreed to waive enforcement of the restrictive covenant as to the 3.25-acre parcel purchased by the Fire Department. The owners of three parcels neither signed the release nor sought to enforce the restrictive covenant.[9] The remaining six parcel owners, now Appellants in this matter, refused to sign the Limited Release of Restrictions. As a result, the Fire Department brought the instant action at law seeking to quiet title to its parcel. In particular, the Fire Department sought to have the restrictive covenant prohibiting the sale of alcoholic beverages invalidated because changed conditions in the immediate neighborhood effectively rendered the restriction obsolete.
On August 29, 2001, following a bench trial, which included a tour of the Culbertson Subdivision and surrounding neighborhood, the trial court granted Judgment in favor of Appellants. The trial court determined that the restrictive covenant prohibiting the sale of alcoholic beverages was valid and enforceable. Specifically, the court concluded that "[b]ecause [Appellants] will realize substantial benefit from the enforcement of this restriction, and because the restriction has not been rendered obsolete by change in the neighborhood, [the Fire Department] is not entitled to the relief sought." Trial Court Opinion, August 29, 2001, at 8. The Fire Department also argued that the principles of estoppel, waiver, and laches rendered the restrictive covenant invalid and/or unenforceable. However, the trial court concluded that these doctrines were not applicable in an action to quiet title or for declaratory relief, and refused to reach the merits of these arguments.[10] The Fire Department filed a Motion for Post-Trial Relief, which the court denied on January 9, 2002. Thereafter, the Fire Department filed a timely appeal.
On direct appeal, the Fire Department raised the following three issues before the Superior Court: (1) whether the trial court erred in determining that the location of three bars, all within two miles of the Culbertson Subdivision, were not within the "immediate neighborhood" of the restricted tract; (2) whether the trial court *878 erred when it found that conditions in the neighborhood had not changed to the extent that the original purpose of the restrictive covenant had been materially altered or abandoned; and (3) whether the trial court erred when it concluded that the principles of estoppel, laches, and waiver are inapplicable in an action to quite title or declaratory judgment.
After considering the first two issues raised by the Fire Department, the Superior Court reversed the Judgment of the trial court in a Memorandum Opinion dated December 23, 2002. First, the Superior Court concluded that the trial court erred in limiting its consideration of Appellants' "immediate neighborhood" to those parcels subject to the restrictive covenant. The court explained that the presence of three liquor-serving establishments within two miles of the restricted tract did not support Appellants' contention "that they experience none of the effects of the sale of alcohol." Superior Court Memorandum Opinion, December 23, 2002, at 8. Next, the court found that conditions in the neighborhood had changed, such that the restrictive covenant no longer had significant value to Appellants. In reaching this conclusion, the Superior Court relied upon the existence of other alcohol-serving establishments within the immediate neighborhood. Moreover, the court noted that sixty-eight of the seventy-seven owners within the Culbertson Subdivision signed the Limited Release of Restrictions. The Superior Court also explained that all of the property owners who testified stated that they did not rely upon the alcohol restriction when purchasing the property. As for the Fire Department's third issue, which concerned the applicability of the doctrines of estoppel, waiver, and laches to the present matter, the Superior Court declined to address the merits of this issue because it reversed the Judgment of the trial court based upon the Fire Department's first two claims of trial court error.
Ultimately, the Superior Court concluded that the restrictive covenant, dating back to 1946, was a nullity and, accordingly, reversed the Judgment entered by the trial court in favor of Appellants. Thereafter, Appellants filed an Application for Reargument or Reconsideration, which the Superior Court denied by Order dated February 25, 2003. On August 6, 2003, we granted allowance of appeal to determine whether the Superior Court erred in reversing the Judgment of the trial court.

DISCUSSION
On appeal to this Court, Appellants argue that the Superior Court erred in finding that the character of the immediate neighborhood changed, such that the original purpose of the alcohol restriction no longer had significant value. Appellants assert that the Superior Court, in reaching its decision, failed to discuss or apply several relevant decisions of this Court. Moreover, Appellants contend that the Superior Court improperly substituted its judgment for that of the trial court, and in doing so, failed to provide the appropriate deference to the factual findings of the trial court.
In response, the Fire Department argues that the restrictive covenant is void and unenforceable. The Fire Department maintains that the purpose of the covenant has been materially altered or destroyed by changed conditions in the immediate neighborhood, such that a substantial benefit no longer flows to Appellants by enforcement of the restriction. According to the Fire Department, the existence of three alcohol-serving establishments within the immediate neighborhood of the restricted tract renders the covenant a nullity. Moreover, the Fire Department stresses that approximately ninety percent *879 of the lot owners within the Culbertson Subdivision waived the restriction, and not a single Appellant relied upon the restriction when purchasing his or her home or property.
In reviewing the ruling of the trial court in an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion. Moore v. Duran, 455 Pa.Super. 124, 687 A.2d 822, 827 (1996), petition for allowance of appeal denied, 549 Pa. 703, 700 A.2d 442 (Pa.1997). Similarly, in a declaratory judgment action, an appellate court is limited to determining whether the trial court committed a clear abuse of discretion or an error of law. Robson v. EMC Ins. Cos., 785 A.2d 507, 509 (Pa.Super.2001), petition for allowance of appeal denied, 568 Pa. 703, 796 A.2d 984 (2002). An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence. Id.
As a general matter, restrictive covenants on the use of land interfere with an owner's free use and enjoyment of real property and, therefore, are not favored by the law.[11]Mishkin v. Temple Beth El of Lancaster, 429 Pa. 73, 239 A.2d 800, 803 (1968). Because land use restrictions are not favored in the law, they are to be strictly construed, and "nothing will be deemed a violation of such a restriction that is not in plain disregard of its express words...." Jones, 120 A.2d at 537. Although the law may disfavor restrictions on an owner's free use and enjoyment of real property, restrictive covenants are legally enforceable. See Schulman v. Serrill, 432 Pa. 206, 246 A.2d 643, 647 (1968); Todd v. Sablosky, 339 Pa. 504, 15 A.2d 677, 679 (1940).
A landowner may limit his or her private use and enjoyment of real property by contract or agreement. Lustig v. Facciolo, 410 Pa. 107, 188 A.2d 741, 743 (1963). It is a fundamental rule of contract interpretation that the intention of the parties at the time of contract governs and that such intent must be ascertained from the entire instrument. Heidt v. Aughenbaugh Coal Co., 406 Pa. 188, 176 A.2d 400, 401 (1962). This same principle of contract law is equally applicable to the interpretation of restrictive covenants. McCandless v. Burn, 377 Pa. 18, 104 A.2d 123, 126 (1954).
In order to ascertain the intentions of the parties, restrictive covenants must be construed in light of: (1) their language; (2) the nature of their subject matter; (3) the apparent object or purpose of the parties; and (4) the circumstances or conditions surrounding their execution. Snyder v. Plankenhorn, 398 Pa. 540, 159 A.2d 209, 210 (1960); Baederwood, Inc. v. Moyer, 370 Pa. 35, 87 A.2d 246, 248 (1952). Typically, we will enforce a restriction if a party's actions are in clear defiance of the provisions imposed by the covenant. Ratkovich v. Randell Homes, Inc., 403 Pa. 63, 169 A.2d 65, 68 (1961); Siciliano v. Misler, 399 Pa. 406, 160 A.2d 422, 424 (1960). Moreover, we will enforce a restrictive covenant where it is established that the restriction is still of substantial value to the *880 owners of the restricted tract. Schulman, 246 A.2d at 647.
As an initial matter, we note that a property owner has the duty to become aware of recorded restrictions in the chain of title and will be bound to such restrictions even absent actual notice. See Finley v. Glenn, 303 Pa. 131, 154 A. 299, 301 (1931) (noting "grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records or other [documentary evidence] of title of his grantor"). Instantly, it is undisputed that at the time of purchase, the Fire Department had notice of the restrictive covenant. The covenant was duly recorded in Crawford County Agreement Book 26, page 9, on June 10, 1946, and easily accessible via title search. The Fire Department clearly had constructive notice of the restrictive covenant; therefore, it cannot now avoid the consequences of such restriction because of its own lack of due diligence. This being the case, the restriction is enforceable unless the Fire Department can establish that the restrictive covenant has been discharged.
In order to discharge the covenant, the burden of proof is on the Fire Department to show that the original purpose of the restriction has been materially altered or destroyed by changed conditions, and that a substantial benefit no longer extends to Appellants by enforcement of the restriction. Daniels v. Notor, 389 Pa. 510, 133 A.2d 520, 523 (1957); Henry v. Eves, 306 Pa. 250, 159 A. 857, 859 (1932). As a general rule, a restrictive covenant may be discharged if there has been acquiescence in its breach by others, or an abandonment of the restriction. Kajowski v. Null, 405 Pa. 589, 177 A.2d 101, 106 (1962). In addition, changes in the character of a neighborhood may result in the discharge of a restrictive covenant. Deitch v. Bier, 460 Pa. 394, 333 A.2d 784, 785 (1975). Where changed or altered conditions in a neighborhood render the strict adherence to the terms of a restrictive covenant useless to the dominant lots, we will refrain from enforcing such restrictions. Daniels, 133 A.2d at 523; Henry, 159 A. at 859. This is based on the general rule that "land shall not be burdened with permanent or long-continued restrictions which have ceased to be of any advantage...." Daniels, 133 A.2d at 524-25; Katzman v. Anderson, 359 Pa. 280, 59 A.2d 85, 87 (1948). In considering changed conditions in a neighborhood, the word "neighborhood" is a relative term, and only the immediate, and not the remote, neighborhood should be measured. Daniels, 133 A.2d at 523.
When deciding whether the character of the immediate neighborhood has changed to warrant non-enforcement of a restriction, a court must consider adjoining tracts, as well as the restricted tract. See Deitch, 333 A.2d at 785. In Deitch, this Court determined that the trial court erred by failing to consider and assess changes on a tract of land adjacent to the restricted tract. Id. The Court remanded the matter so that the trial court could consider the changes to an adjoining tract of land and evaluate their effect on the enforceability of the restrictive covenant. Id. In reaching this decision, we recognized that while changes in the immediate neighborhood do not automatically invalidate a restrictive covenant, such changes are material and relevant in determining whether a restrictive covenant should be enforced. Id.
In the matter sub judice, the Superior Court held "that the trial court erred when it only considered the restricted tract as [Appellants'] immediate neighborhood." Superior Court Memorandum Opinion, December 23, 2002, at 8. However, in reaching its decision, the trial court specifically *881 evaluated the significance of other liquor-serving establishments located outside of the restricted tract. Unlike Deitch, the trial court considered and assessed changes on the land adjacent to the Culbertson Subdivision, and, therefore, did not limit its analysis to the restricted lots. Specifically, the trial court noted:
Plaintiff presented evidence that two bars were now located within the neighborhood. One is to the East on Lincoln Avenue, at least a mile away, in the city of Meadville, and the other is the current Fire Department social hall, about a half a mile away, across the Creek and up a wooded hill. Neither is in the immediate neighborhood of the restricted lots. Accordingly, there is no change in the neighborhood making the restriction obsolete.
Trial Court Opinion, August 29, 2001, at 6. In holding otherwise, the Superior Court effectively substituted its own judgment for that of the trial court.[12]
As such, the relevant inquiry concerning changes to the immediate neighborhood is whether such changes alter or eliminate the benefit that the restriction was intended to achieve. In determining whether changed circumstances rendered enforcement of the present alcohol restriction useless, we find guidance in Benner v. Tacony Athletic Association, 328 Pa. 577, 196 A. 390 (1938). In Benner, property owners sought to enjoin several liquor-serving establishments from selling alcohol in violation of a restrictive covenant contained in their deeds. Id. at 391. Initially, the Court noted that where all of the deeds in the tract contained a restrictive covenant barring the sale of liquor, such a restriction was enforceable. Id. at 392. The alcohol-serving establishments, however, challenged the restrictive covenant, arguing that neighborhood conditions had changed to the extent that the restriction should not be enforced. Id. Nonetheless, the Court explained that "while it is true that some of the tract has become commercial or industrial in character, the larger part remains almost exclusively residential." Id. The Court noted that "the fact that commercial establishments have crept in here and there does not impair the utility of the restriction against the sale of beer or liquor; that restriction, to the residents of the neighborhood, has a desirability and an object unaffected by the encroachments of business."[13]Id. In upholding the enforceability of the restrictive covenant, the Court stated that "[i]t is only when violations are permitted to such an extent as to indicate that the entire restrictive plan has been abandoned that objection to further violations is barred." Id. at 393.
*882 Contrary to the argument of the Fire Department and the holding of the Superior Court, the existence of three other liquor-serving establishments located outside of the Culbertson Subdivision does not warrant a finding of changed circumstances to invalidate the restrictive covenant.[14] Similar to Benner, the changes in the immediate neighborhood did not affect the benefit conferred upon Appellants by the alcohol restriction. These changes, which involved the introduction of establishments serving alcohol in the immediate neighborhood, but outside of the restricted tract, did not impair the utility of the covenant to the residents of the Culbertson Subdivision. Moreover, changes in the commercial nature of the immediate neighborhood, namely, the closing of the nearby Viscose Corporation, did nothing to impair the significance of the alcohol restriction. As Benner recognized, changed conditions outside of the restricted tract do not necessarily impair the value of an alcohol restriction to the residents of the restricted tract. The stated purpose of the restrictive covenant was to protect the "health, peace, safety and welfare" of the occupants of the land by preventing the sale of alcoholic beverages within the tract.[15] The original signatories clearly intended to protect themselves and their heirs from the vices of alcohol consumption by restricting the sale of alcohol within the Culbertson Subdivision. As the trial court noted, "[i]f people are not drinking at establishments in the neighborhood, they are not exhibiting objectionable behavior which accompanies overdrinking, like public drunkenness and driving under the influence." Trial Court Opinion, 8/29/01, at 7. Thus, Appellants will continue to benefit from the restriction as long as alcohol is not sold within the restricted tract.[16]
In determining that the restrictive covenant no longer had substantial value to Appellants, the Superior Court found it significant that a majority of the property owners within the restricted tract agreed to release the alcohol restriction. Moreover, the Superior Court noted that Appellants testified that they did not rely upon the restrictive covenant when purchasing their property. However, the restriction clearly benefits Appellants by hindering the nuisances that inherently result from the sale and consumption of alcoholic beverages. Furthermore, the factual record reflects that alcoholic beverages have never been sold within the restricted tract since the covenant was signed in 1946. As in Benner, the trial court had competent evidence before it to conclude that the *883 entire restrictive plan had not been abandoned and that the alcohol restriction still had significant value to Appellants. Accordingly, the Superior Court erred by substituting its factual determinations for those of the trial court.
Because the alleged changed conditions in the immediate neighborhood did not affect the benefits conferred by the restrictive covenant, the Superior Court erred by refusing to enforce the alcohol restriction. The presence of several other liquor-serving establishments in the immediate neighborhood, but outside the restricted tract, did not render the restrictive covenant a nullity. The trial court properly concluded that Appellants would "realize substantial benefit from the enforcement of this restriction" and that the "restriction has not been rendered obsolete by changes in the neighborhood." Trial Court Opinion, August 29, 2001, at 8. The findings of the trial court were supported by competent evidence of record, and, accordingly, the Superior Court erred in determining otherwise.

CONCLUSION
In accordance with the foregoing discussion, we reverse the Order of the Superior Court reversing the Judgment entered by the trial court. On direct appeal, the Superior Court found it unnecessary to consider the Fire Department's third issue concerning the applicability of the principles of estoppel, laches, and waiver to this matter. The Fire Department properly raised and preserved this issue on direct appeal. However, the Superior Court declined to address this issue because it reversed based upon the Fire Department's first two claims of error. Having concluded that the Superior Court erred in its disposition of the Fire Department's first two issues, we remand the matter to the Superior Court with instructions for it to consider the Fire Department's single, unaddressed issue concerning the applicability of the equitable principles of estoppel, laches, and waiver to the instant matter.
Justice CASTILLE files a dissenting opinion.
Justice SAYLOR files a dissenting opinion.
Justice CASTILLE, Dissenting.
I agree with the Superior Court that the character of the neighborhood surrounding appellees' tracts has been altered to the extent that the restrictive covenant has been rendered a nullity and would, therefore, affirm its judgment. Accordingly, I respectfully dissent.
As the Majority notes, it has long been the law in Pennsylvania that a restrictive covenant can be discharged where the original purpose of the covenant is materially altered or destroyed by changed conditions and there is no longer a substantial benefit to be derived from the restriction. Daniels v. Notor, 389 Pa. 510, 133 A.2d 520 (1957); Henry v. Eves, 306 Pa. 250, 159 A. 857 (1932). When determining whether conditions have changed to such an extent as to invalidate the restriction, courts must look to the immediate neighborhood, which includes adjoining tracts of land. Id. See also Deitch v. Bier, 460 Pa. 394, 333 A.2d 784 (1975).
The Majority, like the trial court, focuses on the fact that there are presently no establishments with liquor licenses within the specific confines of the Culbertson Subdivision and dismisses the presence in the immediately adjoining neighborhood of two bars and the Fire Department's existing social hall, which is located a mere 2,000 feet from the parcel on which the Fire Department seeks to build its new truck room and social hall. The Majority *884 concedes that these three alcohol-serving establishments are located within the immediate neighborhood of the Culbertson Subdivision, "but outside of the restricted tract," then concludes that these three establishments do not impair the utility of the restriction to the owners of the restricted properties. Op. at 882. In one breath, the Majority states that it must consider not only the restricted tract but also the surrounding neighborhood and notes that three other alcohol-serving establishments exist in the immediate neighborhood. Then, in the next breath, the Majority essentially determines that the presence of those other establishments is irrelevant to its inquiry because the only relevant area is the Culbertson Subdivision itself.
The Superior Court, on the other hand, set forth the same legal principles and applied them in a more straightforward fashion. That court found that the trial court record did not support a finding that the Culbertson Subdivision owners experienced none of the effects of alcohol sales, given that the record established the presence of three alcohol-serving establishments located within two miles of the subdivision. Thus, the Superior Court held that the immediate neighborhood had changed with the introduction of the three establishments, and that the trial court erred in restricting consideration of the immediate neighborhood to the restricted tracts. This finding, in my view, establishes the first prong of the test for discharging a restrictive covenant, i.e., that the original purpose is materially altered by changed conditions.
Moving to the second prong, the Superior Court held that the restriction no longer possessed significant value to the subdivision owners based upon the fact that 68 of the 77 owners agreed to execute a release of the covenant, that three additional owners chose not to defend themselves in this action, and that all of the appellees who refused to sign the release testified and admitted that they had not relied upon the covenant when purchasing their properties. I would find that the Superior Court properly concluded that this record evidence establishes that the covenant lacks significant value to the owners of the restricted tracts.
Because restrictive covenants interfere with property owners' free use and enjoyment of their property, such covenants are not favored by courts. Mishkin v. Temple Beth El of Lancaster, 429 Pa. 73, 239 A.2d 800 (1968). Thus, in an appropriate case, our courts will invalidate restrictive covenants that have outlived their usefulness, which is what I believe the record demonstrates has occurred in this case. I agree with the Superior Court that the existence of three alcohol-serving establishments in close proximity to the Culbertson Subdivision constitutes a material alteration or change of the original purpose of the restrictive covenant. That 71 of the 77 purportedly affected owners find no value to the covenant and the other six did not rely upon the covenant in purchasing their properties is a clear signal that the covenant lacks significant value to the subdivision owners at this time. Anachronisms need not persist for their own sake. Accordingly, I would affirm the Superior Court's decision discharging the restrictive covenant in this case.
Justice SAYLOR, Dissenting.
I agree with the majority's assessment, in footnote twelve of its opinion, that the Superior Court, having discerned an error in the trial court's approach to delineating the boundaries of the immediate neighborhood for purposes of determining the obsolescence of the covenant at issue,[1] should *885 have remanded to the common pleas court. In my view, aside from the requirement that adjoining tracts must be considered, evaluation of what constitutes the relevant immediate (as opposed to remote) neighborhood is a uniquely factual determination that is interdependent with the assessment of impact and the continued viability of restrictions in light of changed circumstances.[2] It appearing, at least to me, that the majority and dissenting opinions here can be read as also embodying fact finding from the appellate vantage, I believe that the remand approach is best.
NOTES
[1] Vicki R. Kurt is the only remaining Appellant from the action filed in Crawford County at A.D.2000-857.
[2] A restrictive covenant is defined as "[a] private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." Black's Law Dictionary 371 (7th ed.1999).
[3] The caption of the Agreement granted that the Restrictions passed from Helen L. Reitze, et al., as grantor, to Mrs. Mary Campfield, as grantee.
[4] The social hall is not open to the general public and limits the sale of alcohol to only club members. According to the Fire Department, the social hall is the "economic engine" that funds the operations of the Fire Department. The Fire Department insists that it is not self-sustaining without the critical funds it raises through the sale of alcohol and small games of chance at the social hall.
[5] Appellants also had constructive notice of the planned social hall by way of public notice of a variance hearing and posting on the property regarding the Fire Department's liquor license transfer.
[6] By the time that the Fire Department halted construction of the new social hall, it had already invested approximately $790,000.00 in the project.
[7] None of the businesses or offices currently in the industrial park operate twenty-four hours a day; the majority operates only during daylight hours.
[8] The Limited Release of Restrictions, dated February 21, 2000, provides in relevant part:

[T]he following owners of certain lots or parcels of land hereinafter mentioned in Vernon Township, Crawford County, Pennsylvania and for the mutual considerations contained hereafter and for the sum of $1.00 ... do hereby release, abandon and extinguish any and all restrictions contained in [the Agreement] insofar as said restrictions relate to property known as lots 1, 33, 34, and A of the Culbertson Subdivision, which lots are collectively owned by the Vernon Township Fire Department by deed dated July 3, 1997....
(R.R. at 31a).
[9] The owners of these three parcels chose not to defend the action to quiet title. Accordingly, the trial court found these parcels subject to a default judgment, rendering the restrictive covenant abandoned and extinguished.
[10] Specifically, the trial court determined that the Fire Department failed to show that the remedies at law provided for in the action to quiet title were inadequate; therefore, the court refused to apply equitable principles.
[11] Restrictive covenants are divided into two general categories: (1) building restrictions; and (2) use restrictions. Jones v. Park Lane for Convalescents, Inc., 384 Pa. 268, 120 A.2d 535, 538 (1956). Building restrictions "are concerned with the physical aspect or external appearance of the buildings...." Id. Meanwhile, use restrictions involve "the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein...." Id.
[12] As we have emphasized, changed conditions within an immediate neighborhood, as a matter of law, do not invalidate a restrictive covenant. Here, we have concluded that the trial court properly considered changed conditions to the immediate neighborhood in validating the alcohol restriction. If the Superior Court presumed that the trial court erred in failing to consider changed conditions beyond the restricted tract, but within the immediate neighborhood, it should have refrained from outright reversing the Judgment of the trial court. When faced with similar factual circumstances in Deitch, we ordered a remand so that the trial court could properly assess changed conditions outside of the restricted tract, but within the immediate neighborhood. 333 A.2d at 785. Therefore, pursuant to Deitch, the proper course of action for the Superior Court would have been to remand the matter so that the trial court could consider the alleged changed conditions beyond the restricted tract.
[13] The commercial establishments that moved into the neighborhood included a slaughterhouse, a steam laundry, a carpenter shop, and a livery stable. Benner, 196 A. at 393.
[14] In its Opinion and Order, the trial court acknowledged evidence of two liquor-serving establishments within one mile of the restricted tract. See Trial Court Opinion, August 29, 2001, at 6. However, in its Memorandum Opinion, the Superior Court recognized four liquor-serving establishments within two miles of the restricted tract. See Superior Court Memorandum Opinion, December 23, 2002, at 7-8. Nonetheless, the parties argue, and the record reveals, that three liquor-serving establishments are located within two miles of the restricted tract: including the current Fire Department social hall and two bars.
[15] At trial, the Fire Department argued that the purpose of the restrictive covenant was to prevent employees at the nearby Viscose Corporation from consuming alcohol within the restricted tract. Nevertheless, such an argument is mere conjecture, considering the alcohol restriction is devoid of any language indicating an intent to protect the residents of the Culbertson Subdivision from problems associated with the Viscose Corporation.
[16] As the trial court explained, the covenant is limited to prohibiting the sale of alcohol within the restricted tract. The restriction does not prohibit the serving of alcohol and will not directly eliminate other problems identified by Appellants, such as noise, increased traffic flow, or the glare of headlights shining into households.
[1] Here, the common pleas court expressly defined the boundaries of the immediate area as according to the "Cussewago Creek and a wooded hill to the south, the wooded Water Company land to the Northwest, the industrial park to the Northeast, and the City of Meadville to the East," which are the boundaries of the subdivision subject to the restrictions. See Majority Opinion, at 876 (indicating that, in addition to the northeast boundary with the industrial park, "[t]he remainder of the restricted tract is bounded by wooded land to the northwest, the Cussewago Creek to the south and west, and the City of Meadville to the east"). As the majority notes, this Court in Deitch v. Bier, 460 Pa. 394, 333 A.2d 784 (1975), required at least an express consideration of adjoining tracts in the assessment of the impact of changes to an immediate neighborhood. See id. at 396-97, 333 A.2d at 785.
[2] Although I agree with Mr. Justice Castille that the prevailing sympathy in the neighborhood is with the volunteer fire department, the relevant legal analysis, designed to balance the important and vested property interests involved against the policy of affording relief against obsolete restrictions, focuses on value to any beneficiary owner. See Phillips v. Donaldson, 269 Pa. 244, 247, 112 A. 236, 238 (1920) ("Nor, under such covenant, is it necessary that the community or the majority of the lot owners whose rights under the covenant are affected should complain ... [;] ... we should not hesitate to enforce its provisions where one of the dominant owners seeks such enforcement in an unchanged locality.").