J-A22033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE LIOTTA, CHESTER A. JR. & BRENDA KROKOSKI, ERNEST F. & DARLA J. KEMPER, CYNTHIA G. SMITH, DENIS C. & PAMELA A. WAGNER, DAVID DIETZ, DAWN R. CAIARELLI, KATHLEEN M. BEITH AND MARLIYN CONTI | : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| ROBERT FOSTER HAWKINS AND INDE LEE HAWKINS | | |
| Appellants | : | No. 321 WDA 2023 |

Appeal from the Order Entered March 13, 2023
In the Court of Common Pleas of Venango County
Civil Division at No(s):  Civil No. 814-2021

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: July 16, 2024**

Appellants, Robert Foster Hawkins and Inde Lee Hawkins, appeal from the order entered in the Venango County Court of Common Pleas, enjoining Appellants from using their property as a short-term rental.  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellants and Appellees] are all owners of lots located on River Drive in Sandycreek Township, Venango County, Pennsylvania.  All ten lots in question about the Allegheny River and were previously owned by Edward H. Culbertson and Ruth A. Culbertson.  Commencing in the 1960's, the Culbertsons subdivided this large tract of land into smaller lots along the river.  The various deeds submitted into

evidence refer to a specific lot number or numbers from the plan known as "Bucktail Trails" originally surveyed in 1963 and revised in 1980.

Vehicular access to the lots is by a private road, namely River Drive owned by the Franklin Belmar Drive Road Association, Inc. [("Road Association")]. All the lot owners are members of the Road Association. River Drive … is described in seven of the deeds submitted as an appurtenance to the parcels conveyed as a means of ingress, egress and regress to and from Liberty Street, City of Franklin, Pennsylvania. The deeds also set forth annual payments for use and maintenance of the road. An eighth deed simply states, subject to all the restrictions, leases, covenants, agreements, R-O-W and easements conveyed in or granted in prior instruments. A ninth deed states, subject to exceptions, reservations, conditions, right of way, and reservations as are contained in prior deeds in the chain of title….

[Appellants] purchased real property at 1094 River Drive, Franklin, Pennsylvania via deed dated September 29, 2019. The land was described in the deed as "Lots number 20 and 20A on that certain Plan of Lots designated 'Bucktail Trails'"….

Thirteen months after purchase, [Appellants] began advertising their property through Airbnb for short-term rental. Neighbors brought to the attention of [Appellants] that they were in violation of the zoning code. [Appellees] requested a hearing before the Township board of supervisors. The board found the use of the premises was the equivalent of a Bed and Breakfast and was a permissible conditional use. A conditional use permit was granted.

[On September 29, 2021, Appellees filed a complaint seeking enforcement of a restrictive covenant in Appellants' deed to enjoin Appellants from operating an Airbnb on their property. Appellees alleged that] the operation of a short-term rental by [Appellants] at 1094 River Drive violates the use and building restrictions set forth in the deeds the Culbertsons created for the plan of lots known as "Bucktail Trails." The restrictive use and building requirements set forth in [Appellants'] deed [is as] follows:

> Subject also to the covenants and restrictions that the above described premises shall be used for residential and noncommercial recreational purposes only and no buildings shall be erected or used thereon except a private dwelling and a private garage; and that no house trailer, bus or vehicle, or former vehicle, shall be, used on said premises for dwelling purposes and these covenants shall be considered and construed as covenants running with the land.
>
> Six of [Appellees'] deeds contain the same verbatim restriction. One deed restricts the use of the land to non-commercial recreational purposes only, as building of any kind for residential, commercial, business or industrial use was restricted.

(Trial Court Opinion, filed 3/2/23, at 1-3).

On July 14, 2022, the court conducted a non-jury trial. Appellee Ernest Kemper testified that he and his wife have owned the property directly next to Appellants' property for ten years. The Kempers reside at their River Drive home for approximately seven to eight months out of the year. During the remaining months, they typically visit the River Drive property every other week. Mr. Kemper testified that one of the incentives to purchasing this property was the restrictive covenant contained in the deeds, restricting the use of the properties to residential, non-commercial use. Mr. Kemper testified that he and his wife did not want to invest into a community with a high turnover of people.

Since Appellants have begun renting their property on Airbnb, Mr. Kemper has noticed new renters entering and leaving Appellants' property nearly daily. Some renters stay for a few days, but the vast majority stay for

one day at a time. The renters often bring pets, which has increased the level of noise in the neighborhood. It has also increased the vehicular traffic in the neighborhood, as renters and cleaning services are constantly arriving and leaving the property. Some of the renters have trespassed on the Kempers' property to launch kayaks into the river, which is particularly concerning to Mr. Kemper because he is worried that someone may be injured on his property. Mr. Kemper testified that the constant rotation of unknown individuals in Appellants' property has made him uneasy and has resulted in him changing the way that he utilizes his property. He now ensures that everything on his property is always locked and no longer feels comfortable allowing his young grandchildren to play outside without an adult present.

Appellee Christine Liotta testified that she has owned a property on River Drive since 2006. She stated that she was aware of the restrictive covenants affecting the properties on the road when she purchased her property. Ms. Liotta's understanding of the covenants at the time of purchase was that she would be purchasing a home on a private road in a gated, residential community. This was a motivating factor in her purchase of the property. River Drive is a private road that is gated at two access points. It is owned by the Road Association, and Ms. Liotta serves as the Vice President of the Association. All residents along the road pay dues for the maintenance of the road. The dues were raised from $350.00 to $400.00 in recent years. Many properties have garages that are across the street from their properties, so it

is very common for residents to walk back and forth on the road. Children also often play on the road. Ms. Liotta recalled that when her children were growing up, she generally felt comfortable letting them play out of her sight because it was a gated, residential community and she generally knew everyone that would be entering the area.

Ms. Liotta testified that prior to Appellants' use of their property as an Airbnb, there were very few strangers coming down the street other than delivery trucks. Since the Airbnb has been operating, many unknown renters use the road. The Road Association has had to increase their liability insurance due to the increased exposure to liability from many individuals using the road who are unfamiliar with the area, particularly in icy, winter conditions. Ms. Liotta also now feels the need to lock everything on her property, a practice she did not have before the Airbnb, because of the influx of unknown people into the neighborhood.

Jeffery Superak testified that he has owned a property on River Drive since 1991 and has resided in that property as his primary residence since 2004. He has not noticed an influx of traffic on the road since Appellants began their Airbnb. He stated that he does not feel unsafe in the neighborhood due to the Airbnb renters. Mr. Superak testified that he has also recently begun listing his house on Airbnb and acknowledged that he has a potential financial interest in the outcome of this case.

Appellant Robert Hawkins, Jr. testified that he purchased the property

on River Drive in 2019 with the intention of eventually living there full-time when he and his wife retire. He began utilizing the property as an Airbnb in October of 2020. He restricted the listing to individuals above the age of 25 and he does not allow for any parties to be held at the property. He also generally only permits renters who have a five-star rating on Airbnb to stay at the property. The maximum occupancy permitted at the property is eight individuals and renters typically stay for three to four nights per stay. Additionally, the only person who comes to clean the residence between renters is Mr. Hawkins' sister.

Mr. Hawkins stays at the property with his family for approximately six to eight weeks a year. While he is staying there, he has noticed other residents throwing parties and many guests coming in and out of the neighborhood. On cross-examination, Mr. Hawkins acknowledged that he was aware of the language of the restrictive covenant in the deed at the time that he purchased the property. He acknowledged that none of the Airbnb renters are using the property as their primary residence. He further agreed that his Airbnb listing's occupancy rate is high, and he is generating income from the venture. Appellant Inde Hawkins testified largely in line with Mr. Hawkins' testimony.

On March 2, 2023, the court entered an order enjoining Appellants from using their property as a short-term rental. On March 10, 2023, Appellants timely filed a post-trial motion claiming, *inter alia*, that they had already

booked Airbnb renters through June 2023 and the renters would be unfairly prejudiced by the court's order. On March 13, 2023, the court amended its prior order to defer the commencement of the injunction until June 30, 2023. On March 17, 2023, Appellants timely filed a notice of appeal and a voluntary Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellants raise the following issues for our review:

> Did the trial court err in speculating the Culbertons' reasons for placing the restrictive covenants in the deed for the real property situated in the "Bucktail Trails" subdivision despite there being no evidence produced at trial concerning this alleged fact?

> Did the trial court err in determining that short-term rentals are not used for residential and/or recreational purposes?

> Did the trial court err in finding that most of the residents in the "Bucktail Trails" subdivision use their homes as their full-time residence despite there being no evidence produced at trial concerning this alleged fact?

> Did the trial court err in finding that the use of a home in the "Bucktail Trails" subdivision as an Airbnb constitutes a commercial use, when in fact, said home is being used for residential purposes?

> Did the trial court err in finding that short-term rentals violate the restrictive covenants contained in [Appellants'] deed, as that term is nowhere present in the covenant?

(Appellants' Brief at 5-6).

In their issues combined, Appellants assert that the court made several findings of fact that were speculative in nature and unsupported by the evidence at trial. Specifically, Appellants argue that there was no evidence presented regarding the Culbertons' intent in initially placing the restrictive

- 7 -

covenants in the deeds and the court erred by inferring the intent without evidentiary support. Appellants further contend that the court's conclusion that most of the residents on River Road are full-time residents is unsupported by the record because Ms. Liotta testified that only 18 of the 41 properties had full-time residents and the remaining residents use their property for only portions of the year.

Additionally, Appellants assert that the restrictive covenant's plain language as it relates to the use of the property as a short-term rental is ambiguous and as such, all ambiguities should be resolved in Appellants' favor as the property owners. Appellants claim that the covenant in the deed was intended to maintain a residential neighborhood and prevent the operation of businesses such as restaurants, hotels and boating tours on the properties. Appellants insist that the operation of an Airbnb is substantially different from such ventures because the renters are using the property in a traditionally residential manner. Appellants conclude that the court erred in finding that the use of their property as an Airbnb violates the restrictive covenant in their deed, and this Court must vacate the order enjoining Appellants from operating a short-term rental on their property. We disagree.

This Court's scope and standard of review on appeal following a bench trial is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The

findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue…concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Milby v. Pote*, 189 A.3d 1065, 1075 (Pa.Super. 2018), *appeal denied*, 650 Pa. 122, 199 A.3d 340 (2018). Additionally:

In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa.Super. 2017) (*en banc*) (internal citations and quotation marks omitted).

"As a general matter, restrictive covenants on the use of land interfere with an owner's free use and enjoyment of real property and, therefore, are not favored by the law." *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 579 Pa. 364, 374, 855 A.2d 873, 879 (2004). Nevertheless, restrictive covenants are legally enforceable. *See id.* As such, restrictive

covenants "are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property." ***Pocono Summit Realty, LLC v. Ahmad Amer, LLC***, 52 A.3d 261, 269 (Pa.Super. 2012). "[N]othing short of a 'plain disregard' of the restrictive covenant's express terms can create violation of the covenant." ***Id.***

"When the restrictive covenant is unambiguous, the Court's review is limited to the confines of the covenant." ***Id.*** Regarding the interpretation of the language in a restrictive covenant, our Supreme Court has held:

> It is a fundamental rule of contract interpretation that the intention of the parties at the time of contract governs and that such intent must be ascertained from the entire instrument. This same principle of contract law is equally applicable to the interpretation of restrictive covenants.
>
> In order to ascertain the intentions of the parties, restrictive covenants must be construed in light of: (1) their language; (2) the nature of their subject matter; (3) the apparent object or purpose of the parties; and (4) the circumstances or conditions surrounding their execution. Typically, we will enforce a restriction if a party's actions are in clear defiance of the provisions imposed by the covenant. Moreover, we will enforce a restrictive covenant where it is established that the restriction is still of substantial value to the owners of the restricted tract.

***Vernon Twp. Volunteer Fire Dep't, Inc., supra*** at 375, 855 A.2d at 879-80 (internal citations omitted).

Instantly, the trial court determined that the restrictive covenant in Appellants' deed is intended to prohibit the use of the property for any commercial, non-residential purposes. The court further decided that the operation of a short-term rental such as an Airbnb violates the restriction as

stated. Contrary to Appellants' assertions, we do not see any ambiguity in the plain language of the restrictive covenant. The covenant clearly restricts the use of the property to residential and non-commercial recreational use. Appellants have not noted anything in the record which calls into question the plain meaning of these words. *See Baumgardner v. Stuckey*, 735 A.2d 1272, 1275 (Pa.Super. 1999), *appeal denied*, 561 Pa. 684, 751 A.2d 183 (2000) (holding that restrictive covenant restricting use of properties to residential purposes is not ambiguous and clearly prohibits any commercial uses of the properties). As such, the real dispute in this matter is whether the use of the property to operate an Airbnb is a violation of the unambiguous terms of the restrictive covenant. In making its determination, the trial court analyzed the *Vernon* factors to interpret the language of the covenant:

> In construing the use restriction, the court must ascertain the intent by examining the language of the covenant in light of the subject matter thereof, the apparent purpose of the parties and the conditions surrounding execution of the covenant.
>
> First, we look to the express words used in the instant covenant and rely upon their ordinary meaning. Particularly, the words "residence", "private dwelling", and "noncommercial recreational purposes". Black's Law Dictionary, seventh edition defines residence as "a place where one actually lives." Merriam-Webster, (11th Edition, Copyright 2009), defines residence as "the act or fact of dwelling in a place for some time; the place where one actually lives as distinguished from one's domicile or place of temporary sojourn." Merriam-Webster defines residential as a neighborhood restricted to or occupied by residences.
>
> [This] Court held that the phrase "used for residential and recreational purposes only" "expressly creates a use

- 11 -

restriction. 'Residence' in its popular as well as its dictionary sense, means a place of abode, it is where one lives, either alone, or with one's family, the family is the generally recognized unit. 'Recreation' is understood to denote a pastime affording relaxation and enjoyment. The parties use of the limiting term 'only' makes their intent to prohibit all contrary uses apparent." [***Morean v. Duca***, 430 A.2d 988, 990 (Pa.Super. 1981) (internal citations omitted).] The Court in ***Morean*** held [that] commercial ventures "are clearly violative of the restriction." [***Id.***]

Black's Law defines a "dwelling" as a residence or abode and "private" as relating to or belonging to an individual. Whereas Merriam-Webster defines "dwelling" as a house where people live. However, its definition of "private" restricts the use to a particular person, group or class. Our Supreme Court held [that the words] "private dwelling house" [have] a more restricted meaning than that attributed to "dwelling house" or "single dwelling". [***See Taylor v Lambert***, 279 Pa. 514, 516, 124 A. 169, 170 (1924).] It not only restricts business ventures, the words restrict the dwelling to a "single, private and personal" dwelling. [***Id.*** at 517, 124 A. at 170.]

Second, we look at the deed as a whole and the circumstances surrounding the execution of the covenant to ascertain the apparent purpose of the parties, and from this and the plain meaning of the words in the covenant answer the question … regarding the allowance of short-term rentals under the covenant.

The Culbertsons possessed prime waterfront property that stretched along the arcs of the Allegheny river bank, giving them access to the river along the entire tract of land. This land could have been developed as recreational with public docks for mooring, riverside restaurants, boat rentals and guided boating excursions along the river. The intent of the Culbertsons in creating the 'Bucktail Trails' subdivision is evident from the deeds. Each deed submitted into evidence references the plan of lots known as "Bucktail Trails". Access to each lot is by a private road which is described as an appurtenance to the parcels or lots conveyed. The private road is further described as the sole means of ingress and egress to the lots for which the lot owners must

- 12 -

pay an annual fee for use and maintenance. In addition, the Culbertsons set forth building and use restrictions in each deed.

The intent of the restrictions was to create a classic residential neighborhood that is tidy and pleasing to the eye. House trailers, buses, and vehicles were strictly prohibited for use as premises or for dwelling purposes. Any building erected must be a private dwelling and private garage and used as such. It is further evident that the intent was to create a neighborhood restricted to residences where one actually lives as distinguished from one's place of temporary sojourn. The plain meaning of "used for residential and non-commercial recreational purposes only" clearly establishes the Culbertsons' intent to exclude all other uses including commercial ventures.

* * *

The use restriction in question concerns the nature of occupancy of the homes as affecting the health, welfare and comfort of the neighbors…. It creates a residential neighborhood in which residents develop a sense of community and shared commitment to that community. Acquaintanceship with neighbors also creates a sense of safety. [Mr. Hawkins] testified that the average stay for his renters through Airbnb is three to four nights. The sense of stability and neighborhood peace is lost through the frequent transient nature of these rentals.

The neighborhood has not changed and the general purpose of the restriction has not changed. [Appellees] relied on the restrictive covenant when purchasing their homes. The restrictive covenant set forth in [Appellants'] deed was for [their] benefit and the benefit of [Appellees] who are seeking to enforce the restriction…. To allow short-term rentals would result in the loss of the benefit originally promised under the restrictive covenant.

(Trial Court Opinion at 5-8).

The record supports the court's analysis. *See Milby, supra*. The court

did not speculate as to the Culbertsons' intent in drafting the restrictive

- 13 -

covenants but rather ascertained their apparent intent using the **Vernon** factors and the evidence in the record. The court looked to the location and history of the properties, the language in the various deeds submitted into evidence, and testimony from the parties regarding the characteristics of the neighborhood and the historic use of the properties. The court further found support in common definitions of the language used in the deed, and this Court and our Supreme Court's prior holdings regarding similar terminology in restrictive covenants. Accordingly, we find no merit to Appellants' claims that the court's findings were speculative and unsupported by the record.[1]

Additionally, Appellants cite no authority to support their claim that the operation of an Airbnb is residential and not commercial. Our Supreme Court's analysis in **Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.**, 652 Pa. 224, 207 A.3d 886, (2019), regarding short-term rentals as it relates to violation of residential zoning ordinances is instructive on this point.[2] In **Slice**

---

[1] Appellants further claim that the trial court erroneously found that most residents of the River Drive properties are full-time residents. Nevertheless, Appellants fail to cite to a place in the record where the court made such a finding. Additionally, our review of the record confirms that the court did not rely on such a finding in making its ultimate determination. As such, this claim is without merit.

[2] We recognize that the **Slice of Life, LLC** Court interpreted language specific to the relevant zoning ordinance in that case and as such, its determinations are not dispositive in the instant matter. Nevertheless, the Court evaluated whether a short-term rental is a permissible use of a property located in an area that is zoned for residential use and discussed whether the characteristics of short-term rentals align with traditional residential use of properties. As such, we find the Court's analysis to be relevant and instructive here.

*of Life, LLC*, our Supreme Court evaluated whether the operation of a short-term rental in an area that was zoned residential was a permissible use. As in this case, the property owner in **Slice of Life, LLC** argued that although they generate income from short-term rentals, their property was being used as a single-family dwelling by the renters and such use differed from the operation of a traditional hotel or motel. **See id.** at 236-37, 207 A.3d at 894. The Court rejected this argument, deciding that short-term rentals are purely transient in nature because the renters use the property for only a few days at a time. **Id.** at 252, 207 A.3d at 903. The Court further decided that transient use of a property does not align with the use of a property as a single-family dwelling and as such, the short-term rental was not a permissible use of the property in the residential zoned district. **Id.** Additionally, the Court held the fact that short-term rentals were not specifically prohibited by the zoning ordinance was not dispositive because "[t]he requirement that courts strictly construe a zoning ordinance does not mean that they must ignore uses that clearly fall outside those that are permitted by the ordinance." **Id.**

Here, the trial court's analysis aligns with our Supreme Court's analysis in **Slice of Life, LLC**. Appellants agree in their brief that the language of the restrictive covenant is intended to restrict the use of the property to single-family residential homes and non-commercial recreational purposes. (**See** Appellants' Brief at 22, 30). Mr. Hawkins testified that he generates income

- 15 -

from using his home as an Airbnb. He further acknowledged that the renters stay for a few days at a time, typically for vacation, and do not consider the property their permanent residence. The trial court determined that such transient use of the property was prohibited by the restrictive covenant, which limited use to residential and non-commercial recreational purposes. Additionally, the fact that the covenant did not specifically restrict the operation of short-term rentals does not signify that it is a permissible use. *See Slice of Life, LLC, supra*. The court determined that the transient use of the property as a short-term rental is not a residential or non-commercial recreational use of the property. On this record, and under the specific facts of this case, we cannot say the court erred in determining that Appellants' use of their property as an Airbnb is a violation of the restrictive covenant in their deed.[3] *See Milby, supra*. Accordingly, we affirm.

Order affirmed.

_____

[3] We note that the trial court also classified a "short-term rental" as a rental less than six months, suggesting that the restrictive covenant prohibited renting the property for any term less than a six-month duration. (*See* Trial Court Opinion at 8-9). We depart from this portion of the trial court's reasoning, as the sole issue before the trial court was whether Appellants' use of their property as an Airbnb with a duration of approximately 3 to 4 days at a time violated the terms of the restrictive covenant. As such, the trial court's statements to this effect are dicta and the court's determination in this regard is not controlling on the parties or any other litigation pertaining to this restrictive covenant. *See In re L.J.*, 622 Pa. 126, 140, 79 A.3d 1073, 1081 (2013) (stating that statements by court are binding precedent only when they relate to issues actually raised, argued and adjudicated, and where decision was necessary to determination of case).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/16/2024