522 A.2d 710

JALC Real Estate Corporation and Community Foundation for Human Development, Appellants *v.* Zoning Hearing Board of Lower Salford Township and Lower Salford Township, Appellees.

Argued December 8, 1986, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Sondra K. Slade,* with her, *Ronald M. Agulnick* and *Patricia T. Brennan, Pitt, Agulnick, Supplee & Slade,* for appellants.

*Marc D. Jonas, Silverman, Jonas & Lawrence,* for appellee, Zoning Hearing Board of Lower Salford Township.

*Thomas M. Garrity, Wisler, Pearlstine, Talone, Craig and Garrity,* for appellee, Lower Salford Township.

OPINION BY JUDGE MACPHAIL, March 16, 1987:

JALC Real Estate Corporation and Community Foundation for Human Development (Appellants)[1] appeal from an order of the Court of Common Pleas of Montgomery County which affirmed an order of the Zoning Hearing Board of Lower Salford Township (Zoning Hearing Board). We reverse.[2]

---

[1] Community Foundation for Human Development was substituted for Shiloh of Berks County, Inc. on February 22, 1985 as a party to this action pursuant to Pa. R.A.P. 502 by order of Judge JAMES GARDNER COLINS of this Court. Even though Shiloh is no longer a party, we will use the term "Appellants" to include Shiloh when we refer to the proceedings before the Zoning Hearing Board.

[2] Where, as here, the common pleas court takes no additional testimony, our scope of review is limited to determining whether the Zoning Hearing Board committed a manifest abuse of discretion or an error of law. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 80 Pa. Commonwealth Ct. 79, 471 A.2d 128 (1984).

Appellants requested relief from a cease and desist order issued by the Lower Salford Township Zoning Officer. The officer felt that Appellants' use of a house in an area zoned "R-3 Medium-Density Residence District" was not permitted by the township's zoning ordinance. The Zoning Hearing Board made the following undisputed relevant findings of fact:

11. The proposed use is to house four (4) mentally retarded women between the ages of thirty-two (32) and forty-six (46) with an intelligence I.Q. ranging from one (1) to six (6) years of age.

12. The residents of the building require around-the-clock supervision in the nature of professionally trained employees including a Resident Manager and various full-time and part-time employees, none of whom sleep or permanently reside in the home.

13. The individuals who live at the property reside at no cost to them, but the operation is funded by the United States Government (fifty-five [55%] percent) and by the Commonwealth of Pennsylvania (forty-five [45%] percent).

14. The operation ceased on October 1, 1982 because of inadequate staff, but a resumption of the use is contemplated based upon the securing of adequate staff and the receipt of necessary approvals from the Township.

15. The full staff complement constitutes ten (10) full-time and part-time employees with alternates as required.

16. The functioning of . . . [Appellants'] use is dependent upon the securing of qualified staff.

17. Approximately four (4) cars will be parked at the property at any given time period.

18. The ratio of staff to residents is determined by monies available from State and Federal sources with the minimum ratio based on Federal guidelines of two (2) staff members to four (4) residents.

Appellants make three arguments in the alternative here, as they did before the Zoning Hearing Board and the common pleas court. Appellants argue: (1) that under the zoning ordinance they are entitled to use the property in the manner they desire as a permitted use; (2) that they are entitled under the ordinance to a special exception; and (3) that if they are not entitled to use the property in the manner they wish, either as a permitted use or as a special exception, the zoning ordinance is unconstitutional. Because we agree with Appellants' first argument, we need not address the other two.

The property in question is located in an area of Lower Salford Township zoned "R-3 Medium-Density Residence District." Section 164-41 A of the Zoning Code of Lower Salford Township (Code) provides as a permitted use a "[s]ingle-family detached dwelling." "Dwelling" is defined in Section 164-5 of the Code as follows:

A building or other structure, whether mobile or immobile, designed for and occupied exclusively for residential purposes, including hotel, rooming house, tourist home, institutional home, residential club, motor court and the like.

In the same section of the Code, "single-family dwelling" is defined as:

A building designed for and occupied exclusively as a dwelling for one (1) family.

"Family" is, in turn, defined as:

Any number of individuals living together as a single nonprofit housekeeping unit and doing

their. cooking on the premises, excluding, however, occupants of a club, fraternity house, lodge, residential club or rooming house.

Zoning ordinances must be strictly construed. *Constantino v. Borough of Forest Hills*, 88 Pa. Commonwealth Ct. 306, 489 A.2d 968 (1985). Further, a permitted use must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land. *Appeal of Ethken Corp.*, 89 Pa. Commonwealth Ct. 612, 493 A.2d 787 (1985).

We are convinced that the findings of the Zoning Hearing Board and the undisputed testimony support the conclusion that the four mentally retarded women who would live at the house in question constitute a "family" as defined by the ordinance. The ordinance requires simply that the individuals must "live together as a single, non-profit housekeeping unit" and must do their cooking on the premises. There is no requirement in the ordinance that to be considered a "family" the occupants must be related or that they resemble the common concept of a "family" as used in everyday parlance.

Further, in the definition of "dwelling" the Code includes "institutional home." In the Code's definition of "family," occupants of a "club, fraternity house, lodge, residential club or rooming house" are excluded; however, occupants of an "institutional home" are not. We conclude, then, that occupants of an institutional home who fall under the Code's definition of "family" are living in a "single-family dwelling."[3]

---

[3] The Zoning Hearing Board argues that Appellants may not now raise this specific argument concerning the failure of the Code to exclude occupants of an institutional home from its definition of "family" because it did not raise this specific argument before the Zoning Hearing Board. We decline to take such a restrictive view.

Beyond our analysis of the Code, we feel that this case is controlled by this Court's decision in *Philadelphia Center for Developmental Services, Inc. v. Zoning Hearing Board of Plymouth Township*, 89 Pa. Commonwealth Ct. 591, 492 A.2d 1191 (1985). The question in that case was essentially identical to the one we are faced with here: whether a group home for mentally retarded individuals is permitted in an area zoned for single family dwellings. The pertinent part of the zoning ordinance in *Philadelphia Center* defined a family as "no more than five (5) unrelated individuals living together as a single, nonprofit housekeeping unit and doing their cooking on the premises." *Id.* at 594, 492 A.2d at 1192-93 (*quoting* Section 200 of the Plymouth Township Zoning Ordinance) (emphases deleted). This Court held that group homes for mentally retarded individuals were permitted under the ordinance.

The Court in *Philadelphia Center* dealt with arguments similar to those raised by the Zoning Hearing Board in the instant case:

The township raises a question as to the number of people actually present on the premises at any one time by referring to the number of central staff people required to support the residents. However, the relationship of a staff member to the residents of the CLA [Community Living Arrangement] is similar to that of a non-resident housekeeper, maid, or gardener who performs services for the occupants of a home; the similarity remains whether the staff provides twenty-four-hour supervision or has one of the

---

Appellants *did* argue before the Board that their proposed use is a permitted use under the three definitions found in the zoning ordinance which we deal with here. We feel that they may now argue in any manner how the use is provided for under the definitions of the Code.

staff members remain overnight on a rotating basis.

The township asserts that 'the relationship between the CLA residents and the Center's non-resident employees is not the functional equivalent of a biologically related family, but more like an institutional use.' The township also cites a number of cases in its attempt to show that these arrangements are not the functional equivalent of families; Judge BRODY's opinion effectively has distinguished them. Where, as here, the zoning ordinance provides an operative definition of what constitutes a 'family' without requiring blood or marital relationship, that definition controls.

*Id.* at 595-96, 492 A.2d at 1193.[4]

More recently our Supreme Court had occasion to decide a similar issue in *Appeal of Miller,* 511 Pa. 631, 515 A.2d 904 (1986). In that opinion the Court considered the case of an owner of a house who received as

---

[4] The Zoning Hearing Board cites three of this Court's decisions handed down prior to *Philadelphia Center* in an attempt to show that Appellants' use is not the functional equivalent of a "family": *Lakeside Youth Service v. Zoning Hearing Board of Upper Moreland Township,* 51 Pa. Commonwelth Ct. 485, 414 A.2d 1115 (1980); *Wengert v. Zoning Hearing Board of Upper Merion Township,* 51 Pa. Commonwealth Ct. 79, 414 A.2d 148 (1980); *Pennsylvania George Junior Republic v. Zoning Hearing Board of Coolspring Township,* 37 Pa. Commonwealth Ct. 151, 389 A.2d 261 (1978). *Pennsylvania George Junior Republic* and *Wengert* can both be distinguished from the instant case in that the zoning ordinance involved in both of those cases excluded "institutional home" from the definition of "dwelling." In *Lakeside Youth Service,* the Court noted that the use did not fall under a "special exception" provision because such provision provided that only up to four unrelated individuals could live as a single-family housekeeping unit, but the applicants were seeking to place six (6) unrelated delinquent young females in the group home.

boarders various aged, physically handicapped or mentally retarded persons. The Court found that notwithstanding the fact that the owner received $200 per month from some residents and the residents' lack of permanency, the use of the house was a single family home under the following definition of family: "any number of persons living and cooking together as a single housekeeping unit." *Id.* at 635, 515 A.2d at 905 (*quoting* Middletown Township Zoning Ordinance of 1948) (emphasis deleted).

In holding as it did, the Court made the following observation:

> We also do not accept as valid appellee's argument stressing the special care that is provided these individuals. It is true that the record indicates that many of the residents are elderly or handicapped adults who have no biological family with which to share a home environment. Thus their needs would necessarily be greater than those of the young healthy adult. It is just this kind of support that the traditional family unit is designed to provide. The fact that these individuals may be aged and infirm, and may offend the sensibilities of some, does not warrant the conclusion that their presence is incompatible with the concept of 'family.' They too should have the right to enjoy their remaining years in the more desirable areas of their community and are fortunate to have access to an environment of the type provided by appellant.

*Id.* at 640, 515 A.2d at 909.

We conclude that when considered in light of the definitions found in the Code and the *Philadelphia Center* and *Miller* cases, it is clear that the Zoning Hearing Board committed an error of law in holding that Appellants' use was not permitted. The common pleas court

order affirming the Zoning Hearing Board's decision must be reversed.

ORDER

The order of the Court of Common Pleas of Montgomery County which affirmed the order of the Zoning Hearing Board of Lower Salford Township in the above-captioned matter is reversed.

Judge COLINS dissents.