# Dawson v. Holiday Pocono Civic Association, Inc.

*James Brando*, for plaintiffs.
*Raymond A. Swan*, for defendants.

NANOVIC, *P.J.*, January 21, 2014—Whether property owners in a private residential community hold the basic right to lease their property or whether this right is subject to regulation under the restrictive covenants applicable to the community — to the point of prohibiting any lease for a term of less than one year — is the primary issue at stake in these proceedings. In resolving this issue, the meaning, significance, and enforceability of various deed covenants, bylaws, and rules and regulations in effect for the community, as well as their relationship to the governing municipality's zoning ordinance and state statutes, are critical.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, Richard Dawson, John Montagno and John Nelson, own property in Holiday Pocono ("development"), a private residential subdivision in Kidder Township, Carbon County, Pennsylvania.[1] The development consists of approximately fifteen hundred lots on which four hundred thirty-nine homes have been built. (George Dep., pp. 69-71, 5/17/13).[2] Each lot in the development is subject to a common set of restrictive covenants. Covenants 1, 12, and 13 are directly at issue in these proceedings. They provide as follows:

1. The premises hereby conveyed, shall be used for residential purposes only. No building shall be erected, altered, placed or permitted to remain on the premises hereby conveyed other than one (1) detached single-family dwelling, not to exceed two (2) and one-half stories in height, and a private garage for not more than two (2) cars.

12. An association of all property owners is to be formed by the grantor and designated by such name as may be deemed appropriate, and when formed, the buyer covenants and agrees that he, his executors, heirs or assigns, shall be bound by the bylaws, rules and regulations as may be duly formulated and adopted by

---

1. Richard Dawson is the owner of Lot No. C-271; John Montagno, the owner of Lot No. D-404; and John Nelson, the owner of Lot No. C-274.

2. Many of the homes in the development are second homes used by the owners as vacation homes. (George Dep., p. 69, 5/17/13). The development also includes a network of roads, two lakes, a clubhouse, pavilions, bath houses, and a garage building, title to which is held by the property owners' association for the development. (Complaint and answer, ¶ 12, Exhibit "F" (Association Bylaws, article IV, entitled "assets of the association")).

such association and that they shall be subject to the payment of annual dues and assessments of the same.

13. The buyer agrees not to sell, rent, lease or permit the premises hereby conveyed, excepting to persons first approved for membership in the aforementioned association, nor shall signs for advertising purposes be erected or maintained on the premises.

Located on each of plaintiffs' properties is a single-family residential dwelling which plaintiffs do not use as their primary residence. In the past, plaintiffs have rented their properties to third parties as vacation homes, or otherwise for short periods of time (i.e., monthly, weekly or weekends), and desire to do so in the future. The parties do not dispute that plaintiffs purchased their properties with the intent of renting to others and in which they would reside for only brief periods of time each year.

By letter dated January 15, 2011, Holiday Pocono Civic Association, Inc. ("association"), the property owners' association for the development,[3] notified two of the plaintiffs, Richard Dawson and John Montagno, that the renting of their properties on a transient or short-term basis was prohibited by the development's restrictive covenants, the association's bylaws, and the township's zoning ordinance. This notice did not cite to any specific provisions of the deed covenants, bylaws, or Kidder Township Zoning Ordinance that plaintiffs were allegedly

---

3. Holiday Pocono Civic Association, Inc. is a non-profit Pennsylvania corporation incorporated on January 10, 1964 under the Pennsylvania Non-Profit Corporation Law of 1933, 15 P.S. §§ 2851-1-207. (originally enacted as the Act of May 5, 1933, P.L. 289) (now found at 15 Pa.C.S.A. §§ 5101-5997).

violating. The letter, bearing the caption "warning notice," further stated that "[i]f you continue with this type of rental, you will be subject to fines and/or further legal action for the day the violation occurs. Please be advised that the penalty for a second violation of this nature will result in a $300.00 a day fine and a third violation will result in a $400.00 a day fine. All similar subsequent violations will result in a $500.00 a day fine." Plaintiff, John Montagno, was later advised by letter dated March 21, 2011, that the association would allow him to honor his existing rental agreements through December 31, 2011, without incurring any transient rental fines. In consequence, plaintiffs claim they have been prevented from renting their properties on a short-term basis since January 1, 2012.

After several attempts to resolve their differences proved unsuccessful, plaintiffs commenced the present action against the association and Hank George[4] by complaint filed on August 17, 2012. Therein, plaintiffs request a declaratory judgment against the association confirming plaintiffs' right to lease their properties as they have in the past (Count I), an injunction enjoining defendants from preventing the short-term rental of plaintiffs' properties (Count II), compensatory and punitive damages on behalf of the plaintiffs, Richard Dawson and John Montagno, for alleged fraudulent misrepresentation in directing these plaintiffs to terminate the short-term leasing of their properties (Count III) and, in the alternative to Count III, compensatory and punitive damages for negligent

---

4. Mr. George is a director and the corporate secretary of the Association. The letters of January 15, 2011, and March 21, 2011, were sent under Mr. George's signature.

misrepresentation (Count IV). Both parties have taken discovery and both have filed motions for summary judgment.[5]

## DISCUSSION

### Covenant 1 — Residential Use

The parties do not dispute that Covenant 1 restricts the use of plaintiffs' properties to that for residential purposes. Plaintiffs contend that this, in fact, is what the properties have been used for: that both they and their tenants use the properties as a dwelling within which to reside, albeit on a temporary or short-term basis. The association argues that the rental of the properties for short periods transforms what would otherwise be a residential use to a commercial use for generating income, and that the rental of these properties on a short-term basis is incompatible with the residential character of the development sought to be protected by the deed covenants.

Accordingly, the validity and enforceability of Covenant 1 is not in issue, but rather its interpretation. As

---

5. In *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418 (Pa. 2001), the Pennsylvania Supreme Court set forth the following standard for granting summary judgment:

[W]here there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof...establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.* at 429 (citing *Young v. PennDOT*, 744 A.2d 1276, 1277 (Pa. 2000)).

to the interpretation of Covenant 1, deed covenants are a form of contract and are to be interpreted as such.

> The interpretation of any contract is a question of law for the court. *Currid v. Meeting House Restaurant, Inc.*, 869 A.2d 516, 519 (Pa. Super. 2005). As a general rule of contract interpretation, the intention of the parties at the time the contract is entered into governs. *Baumgardner v. Stuckey*, 735 A.2d 1272, 1274 (Pa. Super. 1999). The same is true in interpreting restrictive covenants. *Id.* However, there is an important difference in the rule of interpretation as applied to restrictive covenants on the use of land. *Id.* Restrictive covenants are limitations on a person's "free and unconstrained use of property." *Richman v. Mosites*, 704 A.2d 655, 657 (Pa. Super. 1997). They are not favored by the law, yet they are legally enforceable. *Logston v. Penndale, Inc.*, 394 Pa. Super. 393, 576 A.2d 59, 62 (1990). As such, they are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property. *Baumgardner*, 735 A.2d at 1274.

*Pocono Summit Realty, LLC v. Ahmad Amer LLC*, 52 A.3d 261, 269 (Pa. Super. 2012). Further, "[i]n the absence of fraud, accident or mistake, parol evidence is inadmissible to very or limit the scope of a deed's express covenants, and the nature and quantity of the interest conveyed must be ascertained by the instrument itself." *Kimmel v. Svonavec*, 85 A.2d 146, 148 (Pa. 1952).

Fifty-eight years ago former Chief Justice Stern succinctly and accurately summarized what is still the law today with respect to restrictions on the use of land:

In order properly to consider and determine the question involved it is important at the outset to have in mind the applicable legal principles that have been enunciated, frequently reiterated, and consistently applied, through a long succession of cases decided by this court. However variously phrased, they are, in substance, that restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner.

*Jones v. Park Lane for Convalescents, Inc.*, 120 A.2d 535, 537-38 (Pa. 1956).

Under these standards, the residential use of the plaintiffs' properties is not restricted to owner-occupied residential use; the rental of the properties is not prohibited; and no distinction is made between short-term and long-term rentals.[6] Not only does Covenant 1 not explicitly, or even implicitly, bar the rental of property, that the plaintiffs' properties could be rented was expressly contemplated

---

6. Nevertheless, in restricting the type of building to be erected to one detached single-family dwelling, Covenant 1 further limits the residential use to that of a private nature, thereby excluding residential purposes of a public character such as general public boarding or apartment houses. *Kauffman v. Dishler*, 110 A.2d 389, 392 n. 1 (Pa. 1955).

in Covenant 13 to which we now turn. *Vernon Township Volunteer Fire Department, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004) ("It is a fundamental rule of contract interpretation that the intention of the parties at the time of contract governs and that such intent must be ascertained from the entire instrument.").

Covenant 13 — Tenant Membership in Association

Covenant 13 conditions the renting or leasing of property within the development only to persons first approved for membership in the association. Defendants claim that none of plaintiffs' tenants have ever been approved for membership in the association and that plaintiffs are prohibited from renting to non-members. Plaintiffs do not dispute that their tenants have not been members of the association, but counter that this limitation on leasing has been abandoned. According to plaintiffs, since the association's inception in 1964, and until its letter of January 15, 2011, the association has never enforced this aspect of Covenant 13, has been aware of and knowingly allowed the rental of properties to non-members, and has gone so far as amending its bylaws in 1990 to provide for an additional assessment on property owners who rent for the additional burden on the common property in the development attributable to tenants. (George Dep., pp. 71-77, 5/17/13).[7]

---

7. The association has approximately nine hundred members, all of whom are property owners within the development. Each property owner, by virtue of his ownership status, is automatically a member in the association. (George Dep., pp. 71-72, 5/17/13).

In his deposition, Mr. George testified that the Association has never admitted tenants as members and that although property owners who lease their property register their leases with the Association, they have

Specifically, article XII of the association's bylaws, which is captioned "Leasing Rights," was amended in 1990 to provide:

A. Any member has the right to rent or lease his property *to adults of their choice* so long as they comply with the provisions of this article and the remainder of the Bylaws.

B. Since the leasing of a property puts an added burden on the association and its facilities, it shall be the responsibility of the member to collect a fee from the lessee and pay this fee to the association to cover their added expenses, all in accordance with a fee schedule established by the board of directors.

C. Any member who leases or rents his property accepts responsibility and liability for the conduct of the lessee.

D. Members shall obtain "Lessee Privilege Cards" from the administrative secretary or such other person designated by the board of directors. The "Lessee Privilege Card" shall be purchased in advance for a specific period of time, and the lessee shall carry the card on his person for identification purposes.

E. The association reserves the right to cancel a "Lessee Privilege Card" in the event the lessee violates the rules and regulations of the association or any of the provisions of these Bylaws. In the event the association cancels a "Lessee Privilege Card", there will be no

---

not been required to seek membership approval for their tenants. (*Id.* at 71-77).

refund of the fee and the lessee will be required to move out of Holiday Pocono immediately.

Association Bylaws, revised 1990 (emphasis added) (Complaint and answer, ¶ 12, Exhibit "F").[8] In addition, Section 2 of the association's rules and regulations promulgated by the board of directors, as amended on August 17, 2007, provided that property owners in leasing their properties should be aware that the provisions of the township zoning ordinance governing an R-2 residential medium-density district are applicable to the development. (Complaint and answer, ¶ 19, Exhibit "H").[9]

"As a general rule, a restrictive covenant may be discharged if there has been acquiescence in its breach by others, or an abandonment of the restriction." *Vernon Township Volunteer Fire Department, Inc.*, 855 A.2d at 880. Abandonment is a question of intent, whether expressly stated or inferred by implication from surrounding facts and circumstances. The burden of proving that the holder

---

8. Notwithstanding this amendment, it appears the association has never established a fee schedule for renters. (Complaint and answer, ¶ 14). In allowing members to rent "to adults of their choice," article XII, paragraph A, at a minimum calls into question the continuing validity of the membership requirement for a tenant contained in Covenant 13. In noting this variance, we are not suggesting that an amendment to the bylaws takes precedence over an inconsistent deed covenant. *Wilkins v. Lake Meade Property Owners' Ass'n, Inc.*, 60 Pa.D.&C.2d 670, 672 (Adams Co. 1960) (holding that bylaw amendments cannot impair or alter property or contractual rights without the consent of the affected parties). However, as discussed further in the text, this bylaw change is clear evidence of acquiescence to the breach and an abandonment of the membership requirement for tenants contained in Covenant 13.

9. The association's bylaws are not the same as the association's rules and regulations. The bylaws are adopted by the property owners and are subject to change only by a majority vote of the property owners. In contrast, the rules and regulations are adopted by the association's board of directors, and are consequently subject to change by a majority vote of the noard of directors. (Complaint and answer, ¶ 21).

of a right has knowingly relinquished its enforcement is upon the party asserting abandonment. *See Benner v. Tacony Athletic Ass'n*, 196 A. 390, 393 (Pa. 1938); *Rieck v. Virginia Manor Company*, 380 A.2d 375, 378 (Pa. Super. 1977). It is not enough to merely show that the right has not been enforced or that the holder has simply tolerated non-compliance. "It is only when violations are permitted to such an extent as to indicate that the [right] has been abandoned that objection to further violations is barred. Nor will indulgence work a waiver or estoppel against the enforcement of restrictions which are distinct and separate from those previously violated." *Benner*, 196 A. at 393.

Whether enforcement of a restriction should be barred by acquiescence or abandonment requires an analysis of the number, extent and character of violations that have occurred, over what time, and the reason why no action was taken. *Moore v. Gangemi*, 1 Pa.D.&C.2d 58, 65 (Phil. Co. 1952). Here, plaintiffs each purchased their properties with the expectation and intent of renting, and listed and rented their properties through real estate agents for several years prior to 2011. After reviewing the prior rental history and the association's covenants, bylaws, and rules and regulations, Richard Dawson purchased his property in February of 2007 for the purpose of renting and in fact rented the property between 2007 and 2011 (Dawson Dep., pp. 7-14, 5/25/13); John Montagno, whose property had also been used for rental purposes prior to his purchase, purchased his property in 2005 believing the same could be freely rented (Montagno Dep., pp. 8-9, 14-20, 5/25/13); John Nelson purchased his property in 1997 and rented

the property from that time until the association changed its bylaws in October 2012 to prohibit short-term rentals. (Nelson Dep., pp. 8-10, 5/25/13). Before purchasing his present property, Mr. Nelson had previously built another home in the development in 1986 which he also leased. (*Id.* at 10).

Moreover, the association has knowingly allowed property owners to rent their properties without requiring tenant membership in the association. As of February 11, 2011, approximately nineteen property owners were renting their properties on weekends and at least thirty-five property owners were renting their properties for other terms. (George Dep., pp. 32-34, 5/17/13). None of these tenants became members in the association. (*Id.* at 71-72).

At no time has Covenant 13's requirement that a tenant first be approved for membership been invoked or enforced. This despite members employing realtors for rental purposes, members advertising their property for rental purposes, and buyers relying upon the association's rules and regulations, as well as its bylaws, as they existed prior to 2011, in their decision to buy and rent properties within the development. The breadth and extent of the association's acquiescence and abandonment of Covenant 13's restriction prohibiting rental to tenants other than those approved for membership in the association was expressly recognized and confirmed by the 1990 amendment to article XII of the bylaws, necessarily voted upon by a majority of the members themselves, which allowed property owners to rent or lease their property to

adults of their choosing so long as they complied with the provisions of article XII and the remainder of the Bylaws. This amendment was existing and in effect for more than twenty years before the association's enforcement notices sent to the plaintiffs, Richard Dawson and John Montagno, on January 15, 2011.

Given these facts, we conclude that the association and its members have acquiesced in the open and notorious violation of the requirement of tenant membership in the association under circumstances evidencing an unmistakable intent not to enforce this provision such that any objection to further violation at this time is now barred.[10]

---

10. In the context of deed restrictions which have become outdated, the Superior Court in *Rieck v. Virginia Manor Company*, 380 A.2d 375 (Pa. Super. 1977) stated:

> In order to effect a release or discharge of the real covenants the burden of proof is upon the owners of the servient tenements to show that the original purpose and intent of the restrictions have been materially altered or destroyed by changed conditions and that substantial benefit and advantage may not inure to the owners of the dominant tenement by the enforcement of the restrictions.

*Id.* at 378. While plaintiffs have not specifically claimed that the membership requirement for a tenant is outdated, the original purpose and intent of this restriction is unclear. To the extent registration or a background check of tenants was sought, this could easily have been accomplished by means other than membership approval, which appears from the face of the deed covenants to place a tenant on equal standing with an owner as a member of the association. (George Dep., p. 69, 5/17/13). Whether this was fully intended and thought through is not apparent from the record.

We believe it also important to note that even absent a finding of abandonment, to the extent defendants argue that plaintiffs are not entitled to summary judgment because none of plaintiffs' tenants have been approved for membership in the association, this is disingenuous. (*See* defendants' brief in support of their motion for summary judgment, pp. 2, 4-5). The association does not and has never approved tenants as members. *See Craig Coal Mining Company v. Romani*, 513 A.2d 437, 440 (Pa. Super. 1986) ("[A party] may not...take advantage of an insurmountable obstacle placed, by himself, in the path of the other

Validity of Unconsented to Amendments to the Association's Bylaws, and Rules and Regulations, which Affect Property Rights

Since the January 15, 2011, enforcement notice sent by the association, the association on February 18, 2011, amended its rules and regulations to prohibit short-term leasing. (Complaint and answer, ¶ 20, Exhibit "I"). Further, the bylaws were amended on October 13, 2012, to prohibit property owners from leasing their property for a term of less than one year in duration. Plaintiffs argue these changes are not binding on them.

Covenant 12 does not allow the association to alter the plaintiffs' property rights at will. To the contrary, "provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties *whose interests are thereby impaired.*" *Schaad v. Hotel Easton Co.*, 87 A.2d 227, 230 (Pa. 1952) (emphasis added). This is particularly true where actual rights of property ownership are affected. In *Weona Camp, Inc. v. Gladis*, 457 A.2d 153, 154 (Pa. Cmwlth. 1983), the Commonwealth Court expressly held that property rights of the members of a non-profit corporation may not be affected without their unanimous consent. That a prohibition on the short-term leasing of real estate works as a restriction and curtailment of inherent rights of ownership cannot be disputed. Consequently, such limitation is not judicially enforceable unless consented to by the affected owners.

Township Zoning Ordinance

---

party's adherence to an agreement. By preventing performance he also excuses it").

Defendants argue that the short-term rental of a single family residence for use as a temporary residence violates the Kidder Township Zoning Ordinance.[11] Defendants

11. At the outset, we are hesitant to address this issue because defendants appear to be positing hypotheticals rather than concrete examples, stating only that "plaintiffs have no idea who their properties are leased by as they all work through agents" (Defendants' brief in support of their motion for summary judgment, p. 8), and also on grounds of standing. Neither the association's bylaws nor its rules and regulations incorporate as its own the township's zoning ordinance. Instead, the rules and regulations simply advise members and their guests that even though the development is a private community bound by deed covenants and managed by an association of property owners, federal, state, and local laws also apply, including the provisions of the township's zoning ordinance, which property owners must abide by. Therefore, were the association to take action to enforce the provisions of the township's zoning ordinance, the authority for such action would likely be premised upon 53 P.S. § 10617, rather than enforcement of a rule or regulation of the association allegedly prohibiting property owners within the development from leasing in violation of the township's zoning ordinance. *See Parker v. Hough*, 215 A.2d 667, 670 (Pa. 1966) (noting that the differences between a zoning regulation and a covenant restriction are significant).

Section 617 of the Municipalities Planning Code authorizes an aggrieved owner of property who demonstrates that his property would be substantially affected by a zoning violation to institute an appropriate action to prevent the violation, provided notice of the action is first "served upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality." 53 P.S. § 10617. Failure to serve this notice is fatal to the commencement of a private claim predicated directly on the violation. *Karpiak v. Russo*, 676 A.2d 270, 275 (Pa. Super. 1996); *see also Bowers v. T-Netix*, 837 A.2d 608 (Pa. Cmwlth. 2003). In *Bowers*, the court stated:

Generally, standing is not an issue of subject matter jurisdiction and, therefore, may not be raised by the court *sua sponte*. However, where, as here, a statute creates a cause of action and designates who may sue, the issue of standing is so interwoven with that of subject matter jurisdiction that it becomes a jurisdictional prerequisite to an action.

*Id.* at 613 n. 14 (citation omitted).

Procedurally, the association is a defendant in these proceedings and has not commenced an action against plaintiffs. Therefore, Section 617 of the Municipalities Planning Code is not technically in play. And while it does not appear from our reading of the association's rules and regulations that the association has the authority under these rules and regulations alone to enforce the provisions of the township's zoning ordinance, plaintiffs have not questioned defendants' standing to do so and have not argued that defendants' concerns about the type of tenants

do not argue that the ordinance prohibits property from being rented, but rather that if the tenant is other than a traditional family unit, such as several couples renting a home for a weekend skiing trip, or a group of students for spring break, this usage is not permitted under the zoning ordinance. Specifically, defendants argue that when plaintiffs lease their properties to groups of individuals who are not families, the property is being used as a rooming or boarding house which is prohibited in the zoning district in which the development is located.[12]

The development is located in an R-2 residential medium-density district. Permitted uses in this district include single-family and two-family houses. (Zoning ordinance, § 180-14). A single-family house is defined in the zoning ordinance as "[a] dwelling unit accommodating a single household and having two side yards." (Zoning ordinance, § 180-6 (Definitions)). A dwelling unit is defined as "[a] building or portion thereof providing complete housekeeping facilities for one family or household." *Id.* A family is defined as "[o]ne or more persons who live together in one dwelling unit and maintain a common

---

plaintiffs select is speculative. As to such issues, it is inappropriate for a trial court to *sua sponte* raise an issue that has not been raised by the parties. *See Shamis v. Moon,* 2013 WL 6252517 *6 (Pa. Super.) (noting that "a trial court cannot raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon"). We are also cognizant that part of plaintiffs' claim is for declaratory judgment. Accordingly, we will address the issue.

12. The zoning ordinance defines a rooming and boarding house as follows:

Any dwelling in which more than three but not more than 20 persons, either individually or as families, are housed or lodged for hire with or without meals. A rooming house or a furnished-room house shall be deemed a boardinghouse.

(Zoning ordinance, § 180-6 (Definitions)).

household. A family may consist of a single person or two or more persons, whether or not related by blood, marriage or adoption. Family may also include domestic servants and gratuitous guests. A family shall not include residents of a group residence, boarding home and/or personal care home." *Id.*

From these definitions we conclude that a group of people who reside together in a single-family home which meets the housekeeping needs of that group, including the sharing of common areas (e.g., kitchen, dining room, living room, and bathroom facilities), is a permitted use in an R-2 district, regardless of whether the occupants of the home are related by blood, marriage, or adoption. This reading comports with the standard that a zoning ordinance must be strictly construed and that "a permitted use must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land." *JALC Real Estate Corporation v. Zoning Hearing Board of Lower Salford Township*, 522 A.2d 710, 712 (Pa. Cmwlth. 1987).

Tort Liability

Counts 3 and 4 of the complaint assert claims of fraudulent misrepresentation and negligent misrepresentation, respectively, on behalf of the plaintiffs, Richard Dawson and John Montagno. To establish a *prima facie* case of fraud, a plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002), *appeal denied*, 828 A.2d 349 (Pa. 2003). "Scienter, or the maker's knowledge of the untrue character of his representation, is a key element in finding fraudulent misrepresentation." *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 960 (Pa. Super. 2013). Further, the standard of proof is clear, precise and convincing evidence. *Yoo Hoo Bottling Co. of Pa., Inc. v. Leibowitz*, 247 A.2d 469, 470 (Pa. 1968).

The elements of a *prima facie* case for negligent misrepresentation are "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002). The differences between a fraudulent misrepresentation and negligent misrepresentation are the state of mind of the person making the misrepresentation and the standard of proof that must be met by the plaintiff. *Kerrigan v. Villei*, 22 F. Supp. 2d 419, 429 (E.D.Pa. 1998). With a negligent misrepresentation claim, the misrepresentation must concern a material fact and the speaker need only have failed to make a reasonable investigation of the truthfulness of the representation (i.e., failure to exercise reasonable care in supplying the information). *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). Furthermore, whereas fraudulent misrepresentation

must be demonstrated by clear and convincing evidence, negligent misrepresentation may be established by a preponderance of the evidence. *Kerrigan*, 22 F. Supp. 2d at 429.

Defendants argue that the defendant, Hank George, acted with reasonable skill and due care and, therefore, cannot be said to have intentionally or negligently misled the plaintiffs when he sent the January 15, 2011, enforcement notice threatening to fine the plaintiffs, Richard Dawson and John Montagno, for violating the deed covenants, association's bylaws, and township zoning ordinance. In making this argument, defendants refer specifically to Mr. George's deposition testimony in which he testified that prior to sending this warning, he reviewed the development's deed covenants, association's bylaws, and township zoning ordinance, as well as the Uniform Planned Communities Act, Municipalities Planning Code, Uniform Construction Act, and Pennsylvania Code Chapters 73 and 109, relating to sewers, septic systems, and drinking water. (George Dep., pp. 88-89, 5/17/13). Additionally, Mr. George testified that he received and relied on advice from two different solicitors for the development and participated in a meeting with the Kidder Township Zoning Board and its solicitor. (*Id.* at 88-90).

While all of this may be true, whether it is and whether Mr. George reasonably relied upon it is for the factfinder to determine. In ruling on a motion for summary judgment, the credibility and reliability of the oral testimony of a party is as much a fact in issue as is any other fact upon which the parties do not agree. *Nanty-Glo v. American*

*Surety Co.*, 163 A. 523, 524 (Pa. 1932).

> The *Nanty-Glo* rule means the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact. Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the [factfinder].

> If, however, the moving party supports its motion for summary judgment with admissions by the opposing party, *Nanty-Glo* does not bar entry of summary judgment. To carry the weight of a binding judicial admission, however, the opposing party's acknowledgment must conclusively establish a material fact and not be subject to rebuttal.

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 595 (Pa. Super. 2013) (internal quotation, citations, and corrections omitted).

Further standing in opposition to defendants' motion is that the schedule of fines cited in Mr. George's January 15, 2011, enforcement notice is not provided for in the association's bylaws, its rules and regulations, or any other source binding on the property owners, and apparently was designed to coerce plaintiffs into ending their short-term rentals. (George Dep., pp. 36-41, 5/17/13). Added to this is that in Mr. George's position as a director and officer of the association he stood in a fiduciary relation to the

association and its members, and was required to act not only with the care which a person of ordinary prudence would use under similar circumstances, but also to perform his duties in good faith. 68 Pa.C.S.A. § 5303 (a); *see also McMahon v. Pleasant Valley West Association*, 952 A.2d 731, 736 (Pa. Cmwlth. 2008) (quoting Restatement (Third) of Property (Servitudes) § 6.13 (2000) for the proposition that a homeowners' association owes a duty to treat its members fairly and to act reasonably in the exercise of its discretionary powers, including rulemaking, enforcement, and design control powers). Because the facts are not undisputed, on this issue both parties' motions for summary judgment will be denied.

## CONCLUSION

In general, an owner of property is entitled to use his property in any way he desires, "*provided he does not* (1) violate any provision of the federal or state constitutions; or (2) create a nuisance; or (3) *violate any covenant, restriction* or easement; or (4) violate any laws of zoning or police regulations which are constitutional." *Parker v. Hough*, 215 A.2d 667, 669 (Pa. 1966) (emphasis in original) (citation omitted). When, however, a restriction or covenant limits the use of real estate, the limitation is narrowly construed in favor of the owner and may, over time, dissipate and be lost.

Holiday Pocono is a private community held together by a common set of restrictive covenants which bind some, but do not nullify all, rights of ownership. The development is located in the Poconos with many of the homes being second homes used as vacation properties

by their owners. Common sense dictates that the right to lease these homes, especially on a short-term basis, is important. To relinquish this right by covenant requires an express clear statement that the right does not exist. To do so either in an association's bylaws or the rules and regulations of its board of directors requires the express consent of all affected owners. To do so by zoning is prohibited as a matter of law since the regulation of the exercise of ownership rights is distinct from the regulation of how property is used. *County of Fayette v. Cossell*, 430 A.2d 1226, 1228 (Pa. Cmwlth. 1981) ("[I]f a use is permitted, a municipality may not regulate the manner of ownership of the legal estate."). Because none of these conditions have been met, we find that the plaintiffs are not barred from the short-term rental of their properties in Holiday Pocono to tenants who use the property for residential purposes for their sole and exclusive use.

Civil Law — Private Residential Community — Restrictive Covenants — Interpretation — Abandonment/ Acquiescence — Property Owners' Association — Amendment of Rules and Regulations Affecting Property Rights — Zoning — Ordinance — Strict Construction — Enforcement — Private cause of Action — Motion for Summary Judgment — Issues of Material Fact — *Nanty-Glo* Rule — *Sua Sponte* Raising of Issues by Court

1. Restrictive covenants on the use of land are not favored by the law and are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property.

2. A restrictive covenant restricting the use of property

for residential purposes only does not prevent leasing of the property for residential purposes, notwithstanding this will generate the receipt of income.

3. As a general rule, a restrictive covenant may be discharged if there has been acquiescence in its breach by others, or an abandonment of the restriction. Abandonment is a question of intent, whether expressly stated or inferred by implication from surrounding facts and circumstances.

4. A restrictive covenant which prohibits the renting or leasing of property within a private residential community only to persons first approved for membership in the community's property owners' association, which covenant has never been enforced and its violation actively acquiescing in for more than forty years, has been abandoned and its enforcement is barred.

5. Restrictive covenants, bylaws or other provisions affecting property or contractual rights in a private residential community cannot be repealed or altered without the consent of the parties whose interests are thereby impaired.

6. The right to lease real estate is an inherent right of ownership which a property owners' association cannot prohibit absent the consent of the affected owners.

7. Section 617 of the Municipalities Planning Code authorizes an aggrieved owner of property who demonstrates that his property would be substantially affected by a zoning violation to institute a private action to prevent the violation.

8. A zoning ordinance must be strictly construed and a permitted use therein must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land.

9. A zoning ordinance which allows as a permitted use in an R-2 residential medium density district single family houses in which one family or household may reside, as those terms are defined in the ordinance, does not prohibit a group of unrelated persons from residing together in a single family home which meets the housekeeping needs of that group.

10. In ruling on a motion for summary judgment, the credibility and reliability of the oral testimony of a party is as much a fact in issue as is any other fact upon which the parties do not agree.

11. It is inappropriate for a trial court to *sua sponte* raise an issue that has not been raised by the parties and then grant summary judgment premised on that issue.