# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Hartman and :
Ashley Hartman, : No. 650 C.D. 2015
: Argued: December 7, 2015
          Appellants :
:
       v. :
:
The Zoning Hearing Board :
of Cumru Township and :
St. Francis Home and :
Cumru Township :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION
BY SENIOR JUDGE FRIEDMAN          FILED: February 12, 2016


       Joshua Hartman and Ashley Hartman appeal from the March 25, 2015, order of the Court of Common Pleas of Berks County (trial court), denying the Hartmans' land use appeal and affirming the decision of the Zoning Hearing Board (ZHB) of Cumru Township (Township). We affirm.

       On July 24, 2014, St. Francis Home filed an application for a residential building permit (building permit) with Township, seeking permission to build a single-family, detached dwelling on undeveloped property designated as Lot 1 of the Final and Minor Subdivision Plan of the Impink Subdivision located in the Township

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

(Property). The Property is in the High Density Residential (HR) zoning district. The HR zoning district was established pursuant to the Cumru Township Zoning Ordinance of 2009 (Ordinance). (ZHB's Findings of Fact, Nos. 4, 10, 12a, 13-14; Trial Ct. Op. at 1-2.)

St. Francis Home planned to build the dwelling pursuant to a June 9, 2014, agreement with Margaret J. Impink. The agreement provided that Impink would donate the Property to St. Francis Home for the purpose of providing care to terminally ill[2] individuals in a family-like environment in a residential dwelling constructed on the Property.[3] The proposed dwelling would house three terminally ill residents, and four members of St. Francis Home (volunteers) would come on a daily basis to provide comfort and care to the residents. There would be three individual bedrooms, three individual bathrooms, one common living room, one common kitchen, and one common dining area. The volunteers would provide cooking, cleaning, and maintenance services for the residents. However, the residents would contract for their own support services, such as nursing and healthcare services. On the building permit application, Impink was identified as the current owner of the Property. However, Impink had previously conveyed the Property to St. Francis Home. (ZHB's Findings of Fact, Nos. 8, 12, 14; Trial Ct. Op. at 1-2.)

---

[2] Individuals diagnosed by a physician with six months or less to live. (ZHB's Findings of Fact, No. 12c.)

[3] St. Francis Home is a non-profit corporation, and the dwelling will be maintained solely for a charitable purpose, not for a profit-based motive. (ZHB's Findings of Fact, No. 8.)

On August 5, 2014, St. Francis Home filed an application for a permit to construct a curb, a sidewalk, and a driveway entrance (construction permit) on the Property. The construction permit also identified Impink as the current owner of the Property. Both the building and construction permits were approved by the Township zoning officer, Jeanne E. Johnston (zoning officer), in September 2014. (ZHB's Findings of Fact, Nos. 13-15.)

The Hartmans subsequently appealed the zoning officer's issuance of the permits. The Hartmans are the owners of property at 136 Hillside Drive, Park Manor (Hartmans' property), in the Township. The Hartmans' property is adjacent to the Property and is also in the HR zoning district. (*Id.*, Nos. 1-2, 7, 16; ZHB's Decision, at 7.)

On November 11, 2014, the ZHB held an evidentiary hearing and on December 9, 2014, denied the Hartmans' appeal. The ZHB determined that the proposed dwelling constituted a single-family dwelling, which is a permitted use in the HR zoning district. The Hartmans appealed to the trial court, which dismissed their appeal and affirmed the ZHB. The Hartmans now appeal to this court.[4]

Initially, the Hartmans argue that the ZHB erred and abused its discretion in denying their land use appeal because the evidence of record is

---

[4] Where the trial court takes no additional evidence our review is limited to determining whether the ZHB abused its discretion or committed an error of law. *Servants Oasis v. Zoning Hearing Board of South Annville Township*, 94 A.3d 457, 461 n.5 (Pa. Cmwlth. 2014).

insufficient to support the ZHB's determination that the proposed dwelling constitutes a single-family dwelling as defined in the Ordinance.

Pursuant to section 701(A) of the Ordinance, a single-family, detached dwelling is a use permitted by right in the HR zoning district. Section 202 of the Ordinance defines "single-family detached dwelling" as "[a] building arranged, intended or designed to be occupied exclusively as a residence for one (1) family and having no common wall with an adjacent building." Section 202 of the Ordinance defines "family" as:

> [A] group of not more than four (4) persons unrelated by blood, marriage or adoption, living together in a single dwelling and maintaining it as a functional common household. The term "family" shall be deemed to include any domestic employees or gratuitous guests but shall not include any roomer, boarder, lodger or persons residing in a group home.[5]

In *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401, 409 (Pa. 2004), the Pennsylvania Supreme Court stated that in determining whether a home meets the definition of "single-family dwelling," the "relative stability and permanence in the composition of the familial unit" must be considered.

---

[5] Section 202 of the Ordinance defines "group home" as:

> A household of not more than five (5) persons, not necessarily related by blood, marriage, adoption, or legal guardianship, who, because of their physical or emotional condition, or their social or interpretation skills, otherwise would limit, inhibit, or prevent their ability to function as useful or productive members of society. All such group homes shall be provided with supported services through a licensed social service agency.

"[T]he composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient."[6] *Id.* at 410.

The *Albert* Court determined that a halfway house with 15 women residents did not qualify as a "single[-family] housekeeping unit." *Id.* The Court found that the halfway house was "[f]ar from being a relatively stable and permanent assemblage" because the residents could return to their families within two months of receiving rehabilitation at that house. *Id.*

The Hartmans contend that the terminally ill residents are transient because they will only reside at the dwelling for six months or less. However, unlike *Albert*, this is not a temporary housing situation. The residents will reside permanently at the dwelling until their death and do not have to leave if they live longer than six months. Thus, we agree with the ZHB that the arrangement is stable and permanent, not transient.

Further, in determining whether the home is a single-family dwelling, we must consider whether the residents will maintain it as a functional common household. *See In re Appeal of Miller*, 515 A.2d 904, 908 (Pa. 1986). In *Miller*, the Pennsylvania Supreme Court found that Miller, who opened her home to boarders of various ages with physical or mental handicaps, established her home as a functional common household. *Id.* at 905, 909. The Court stated that:

---

[6] "Transient" is defined as "[a] person or thing whose presence is temporary or fleeting." Black's Law Dictionary 1637 (9th ed. 2009).

5

> The individuals lived and cooked together as a single housekeeping unit. The same furnishings were throughout the house and the activities of the home were shared in by all occupants. Each occupant had access to all areas of the premises. There was only one kitchen, the meals were taken by all as a group at one sitting. The group attended social and religious functions together and celebrated holidays jointly.

*Id.* at 908.

The proposed dwelling will have three bedrooms, one common kitchen, a dining room, a living room, a laundry room, a foyer, an office, and a chapel. All of the meals will be made in the kitchen and served to the three residents, who will eat together in the dining room, socialize in the living room, and go to the chapel for religious services. Further, the residents will have access to all areas of the home. Thus, the ZHB was correct in determining that the residents will maintain the home as a functional common household.

Further, the Hartmans contend that the ZHB erred in considering both the residents and the volunteers together as the "family." The Hartmans assert that the sole issue is whether the residents *alone* constitute a "family." *See Lantos v. Zoning Hearing Board of Haverford Township*, 621 A.2d 1208, 1211 (Pa. Cmwlth. 1993) (finding that there was no evidence presented that students maintained a common household, operating in such a manner akin to a family unit or the functional equivalent thereof and, thus, did not constitute a "family").

Section 701(A) of the Ordinance provides in pertinent part that "[t]he term 'family' shall be deemed to include any domestic employees." Here, the

6

"family" would consist of the three terminally ill residents and four volunteers, one of which will stay overnight at the dwelling each night. Nancy Schwartz, President of the St. Francis Home Board of Directors, testified that the purpose of the proposed dwelling is to provide a family-like environment for the three terminally ill residents where the volunteers provide them support and care. (N.T., 11/11/14, at 29.) The ZHB did not err in including the four volunteers as part of the "family." *See JALC Real Estate Corporation v. Zoning Hearing Board of Lower Salford Township*, 522 A.2d 710, 711-13 (Pa. Cmwlth. 1987) (holding that four unrelated mentally retarded adult women and a ten-person support staff constituted a family); *Philadelphia Center for Developmental Services, Inc. v. Zoning Hearing Board of Plymouth Township*, 492 A.2d 1191, 1193 (Pa. Cmwlth. 1985) (holding that three mentally retarded residents in a supervised, residential home atmosphere with one resident staff member constituted a family).[7]

Next, the Hartmans argue that the ZHB erred and abused its discretion in determining that the volunteers are "the equivalent to domestic employees and/or gratuitous guests" because neither of these terms is defined in the Ordinance.

---

[7] The Hartmans also assert that the ZHB should have considered whether the proposed use was a group home, a convalescent home, a hospice home, or something other than a "single-family" home. The Hartmans contend that the ZHB's failure to consider these other options violated the fundamental rule that the interpretation, administration, or enforcement of a zoning ordinance must be uniform and cannot be left to the unbridled discretion or arbitrary action of the municipal body or officials. *See Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 971 (Pa. Cmwlth. 2015). However, the record reflects that the ZHB did address whether the proposed use was a group home, convalescent home, or hospice home. The ZHB found that none of these applied. (*See* ZHB's Findings of Fact, Nos. 26-35.)

When a term is undefined in an ordinance, we look at the term's common meaning "and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). When defining a term, we may look at statutes, regulations, or dictionaries for assistance. *Id.*

Black's Law Dictionary defines "domestic" as "[o]f or relating to the family or the household." Black's Law Dictionary 557-58 (9th ed. 2009). "[E]mployee" is defined as "[a] person who works in the service of another . . . ." Black's Law Dictionary 602 (9th ed. 2009). The volunteers at St. Francis Home will be going to the dwelling on a daily basis to cook, serve, assist, and care for the residents. Thus, the ZHB correctly determined that the volunteers met the definition of a domestic employee.

Next, the Hartmans argue that the ZHB erred and abused its discretion in denying their land use appeal because section 1302(A) of the Ordinance "specifically requires all permit applications to be filed by or on behalf of the correct, current property owner." (Hartmans' Br. at 20.) We disagree.

Section 1302(A) of the Ordinance provides:

> The following general requirements shall apply to zoning permits, certificates of occupancy, as reviewed and issued by Cumru Township:
>
> (1) Persons desiring to undertake any new construction, structural or site alteration, or changes in the use of a building or lot shall apply for a permit by filling out the appropriate application form and by submitting the required fee.

8

The record reflects that the building and construction permit applications were submitted by Berks Homes, the contractor hired by St. Francis Home to construct the proposed dwelling. Although the applications listed Impink as the Property owner, Impink transferred the Property to St. Francis Home on July 9, 2014, before the permits were requested. The ZHB found that the 2014 permit applications listing Impink as the owner did not prejudice any party in this proceeding. As the ZHB determined, "'[b]ased upon the fact that Ms. Impink and the St. Francis Home had commonality and were in agreement as to the purpose of the permits, there is no prejudice to anybody.'" (Trial Ct. Op., 12/9/14, at 9 (citing ZHB's Findings of Fact, No. 44).) We agree.[8]

Next, the Hartmans argue that the ZHB erred and abused its discretion in denying their land use appeal because the Township Solicitor (Solicitor) acted as an advocate for the Township and St. Francis Home at the hearing, thereby creating an appearance of bias and/or impropriety. The Hartmans contend that the solicitor for a ZHB may act as an advisor to the ZHB, *see 813 Associates v. Zoning Hearing Board of Springfield Township*, 479 A.2d 677, 680-81 (Pa. Cmwlth. 1984), but may not assume the position of advocate for a particular position. Further, a tribunal charged with hearing matters must not only be unbiased but also must avoid the appearance of bias and/or impropriety. *Horn v. Township of Hilltown*, 337 A.2d 858, 859-60 (Pa. 1975).

---

[8] The ZHB stated that Township and the Hartmans were aware in 2012 that Impink intended to transfer the Property to St. Francis Home for the purpose of constructing the proposed dwelling.

The Hartmans complain that the Solicitor, during questioning, spoke of his own experiences. However, the Hartmans did not object to the Solicitor's statements at the hearing, so this argument is waived. *See D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 725 (Pa. Cmwlth. 2010).

Further, the ZHB's refusal to admit testimony and evidence regarding traffic congestion and decreased property values did not amount to bias and was not improper. This case involves the issuance of building and construction permits and, as such, testimony on traffic congestion and decreased property values was not relevant. The only issue before the ZHB was whether the permits were correctly issued pursuant to the provisions of the Ordinance.[9]

Finally, the Hartmans contend that the ZHB erred and abused its discretion in denying their land use appeal because the ZHB's Findings of Fact Number 22 is not supported by the evidence.[10] Although the record indicates that the Hartmans did not make an offer of proof, the Hartmans did attempt to offer an expert to present evidence as to traffic congestion. Such testimony was not allowed by the

---

[9] If St. Francis Home was denied the permits because the proposed dwelling was not a permitted use under the Ordinance, then St. Francis Home would have to apply for a special exception or a variance. In either of those proceedings, testimony regarding increased traffic and decreased property values would be relevant.

[10] The ZHB's Findings of Fact Number 22 provides:

> [The Hartmans] made an offer of proof to introduce a vehicular and/or traffic engineer to demonstrate the increase in vehicular traffic which would be caused by constructing the St. Francis Home residence.

ZHB, and the Hartmans requested that their objection be noted. The ZHB's Findings of Fact Number 22 was not relevant to the outcome of the case, as it related to an issue that was not before the ZHB. Therefore, we agree with the trial court that the error did not have any affect on the outcome of the case.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Hartman and             :
Ashley Hartman,                  : No. 650 C.D. 2015
                                        :
                Appellants      :
                                          :
                  v.            :
                                          :
The Zoning Hearing Board    :
of Cumru Township and       :
St. Francis Home and         :
Cumru Township               :

O R D E R

AND NOW, this 12th day of February, 2016, we hereby affirm the March 25, 2015, order of the Court of Common Pleas of Berks County.

ROCHELLE S. FRIEDMAN, Senior Judge